# APPENDIX A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE:

EX PARTE APPLICATION OF
IRAQ TELECOM LIMITED FOR AN
ORDER TO OBTAIN DISCOVERY FOR
USE IN FOREIGN PROCEEDINGS
PURSUANT TO 28 U.S.C. § 1782

Case No. _____

## DECLARATION OF CYRUS BENSON

Pursuant to 28 U.S.C. § 1746, I, Cyrus Benson, declare under penalty of perjury as follows:

1. I am a partner with the London, England office of Gibson, Dunn & Crutcher LLP. I specialize in litigation, international arbitration and alternative dispute resolution (including arbitrations under the rules of the International Chamber of Commerce (the "**ICC**")). I was admitted to the bar of the State of New York in 1992 and to practice as a solicitor of England and Wales in 2008. I was based in New York from 1991 to 2004, where I was admitted to the bars of the U.S. District Courts for the Southern and Eastern Districts of New York and the U.S. Court of Appeals for the Second Circuit. I moved to London in 2004 and since that time have concentrated my practice almost exclusively on international arbitration. I received a Bachelor of Arts degree from Syracuse University in 1984, a Master's degree in International Relations from Syracuse University in 1986 and a Juris Doctor degree from the New York University School of Law in 1991 (each with honors).

2. As discussed further below, I represent Iraq Telecom Limited ("**Iraq Telecom**"), and Agility Public Warehousing Company K.S.C.P. ("**Agility**"), one of Iraq Telecom's shareholders, in a number of matters.

3. I submit this declaration in support of the *ex parte* application submitted by Iraq Telecom for an order to obtain discovery for use in foreign proceedings pursuant to 28

U.S.C. § 1782 from Dechert LLP ("**Dechert**") in the Eastern District of Pennsylvania (the "**Application**").

4. I understand that Iraq Telecom seeks information, documents and testimony from Dechert relating to the purchase of two properties in the United Kingdom (the "**UK Properties**"), in 2014 and 2016 respectively, by close business associates of Raymond Rahmeh ("**Mr. Rahmeh**"), including but not limited to: (i) the identity of the individual(s) who engaged Dechert to purchase the UK Properties on behalf of the true buyers(s), including but not limited to the identity of the true buyer; (ii) the date upon which that individual and/or the buyers engaged Dechert; and (iii) the source of funds used to purchase the UK Properties (the "**Requested Discovery**").

5. I further understand that the Requested Discovery is for use in: (i) a pending arbitration administered by the ICC (the "**ICC Proceeding**"); and (ii) a contemplated proceeding in the English High Court of Justice, Business and Property Courts of England and Wales, Queen's Bench Division, Commercial Court (the "**UK Proceeding**").

6. As Iraq Telecom's counsel in the pending ICC Proceeding, I am familiar with the information set forth in this declaration either from personal knowledge or on the basis of documents I have prepared and/or reviewed. These documents include, but are not limited to, the following pleadings submitted by Iraq Telecom in connection with the pending ICC Proceeding: (i) a request for arbitration against Korek International (Management) Ltd. ("**CS Ltd**") and Sirwan Saber Mustafa (also known, and referred to herein, as "**Mr. Barzani**") alleging breaches of various agreements between the parties, which Iraq Telecom submitted on June 4, 2018 (the "**RFA**"), attached hereto as **Exhibit 1**;[1] and (ii) Iraq Telecom's Statement of Claim, filed on August 28,

---

[1] I certify that Exhibit 1 is a true and correct copy of the RFA as filed with the ICC.

2

2019 (the "**Statement of Claim**"), attached hereto as **Exhibit 2**.[2] Because I submit this declaration specifically in support of the Application, it does not contain each and every fact within my knowledge regarding the topics discussed herein.

I. **ICC PROCEEDING**

7. As referenced above, Iraq Telecom filed its RFA on June 4, 2018.[3] On September 10, 2018, CS Ltd and Mr. Barzani filed their answer to the RFA and on March 29, 2019, the ICC Arbitral Tribunal (the "**Tribunal**") was constituted. On May 15, 2019, the Tribunal issued an order establishing the procedural timetable for the ICC Proceeding (the "**Procedural Order**"), attached hereto as **Exhibit 3**.[4] Iraq Telecom filed its Statement of Claim on August 28, 2019. The Statement of Defense is due on December 11, 2019. Document production is scheduled for April 1, 2020.

8. The Statement of Claim alleges that CS Ltd and Mr. Barzani breached various agreements relating to the Investment Transaction (as defined in the Application),[5] including by: (i) failing to act in the best interests of Korek Telecom Company LLC ("**Korek**"); (ii) violating their non-compete obligations; (iii) failing to honor a call option; (iv) engaging in self-dealing; and (v) failing to disclose conflicts of interest in connection with transactions relating to Korek. Iraq Telecom alleges that it suffered damages in excess of USD 1.1 billion. *See* Statement of Claim at C.6.

---

[2] I certify that Exhibit 2 is a true and correct copy of the Statement of Claim as filed with the ICC.

[3] The March 10, 2011 shareholders' agreement between Iraq Telecom, CS Ltd. and the other parties, requires that any disputes relating to these agreements be resolved by arbitration under the ICC Rules of Arbitration (the "**ICC Rules**").

[4] I certify that Exhibit 3 is a true and correct copy of the Procedural Order issued by the Tribunal.

[5] I understand that the Investment Transaction is described more fully in the Application and related declarations and exhibits. Therefore, for purposes of efficiency, I have not discussed the Investment Transaction in any detail. The Investment Transaction is also discussed at length in the Statement of Claim at C.1.

9. The Statement of Claim further alleges that Mr. Barzani and his associates, including Mr. Rahmeh (the supposedly "independent" member of the Korek Supervisory Committee, nominated by CS Ltd), colluded with the Iraqi Communications and Media Commission (the "**CMC**") to bring about an order of the CMC declaring the Investment Transaction to be "*void, null and invalid*" and ordering Korek to "*reinstate the status as it was on 13/3/2011*" (i.e. before implementation of the Investment Transaction) (the "**CMC Order**"). *See* Statement of Claim at Section C.2.1.1. Specifically, as it relates to the instant Application, the Statement of Claim includes allegations that Mr. Rahmeh's associates purchased the UK Properties as part of a network of financial transactions, cash pay-offs, and bribes, designed to bring about the CMC Order. Iraq Telecom seeks damages of approximately USD 600 million flowing from the CMC Order. *See* Statement of Claim at C.2.1. ¶ 82.

10. The Requested Discovery will support the above claims in the ICC Proceeding, as it is anticipated to provide evidence that Mr. Rahmeh, on behalf of Mr. Barzani, bribed certain CMC officials to engage in conduct which violated the parties' agreements.

## II.   AUTHORITY AND PROCEDURES OF THE ICC INTERNATIONAL COURT OF ARBITRATION AND ARBITRAL TRIBUNALS

11. The ICC is an international business organization representing more than 45 million companies in over 100 different countries.[6] The ICC is also a leading provider of dispute resolution services.[7]

---

[6] *About Us,* INTERNATIONAL CHAMBER OF COMMERCE, https://iccwbo.org/about-us/ (last accessed Oct. 31, 2019).

[7] *Who We Are,* INTERNATIONAL CHAMBER OF COMMERCE, https://iccwbo.org/about-us/who-we-are/ (last accessed Oct. 31, 2019).

4

12. The ICC's dispute resolution function is primarily carried out by the ICC International Court of Arbitration (the "**ICC Court**").[8] While the word "court" is used in the name, the ICC Court does not make formal judgments on disputed matters. Rather, the ICC Court supervises and administers ICC arbitrations. The ICC Court may administer an arbitration with the agreement of the parties, including where: (i) the parties have included a clause in their contract providing that any disputes between them will be adjudicated in accordance with the ICC Arbitration Rules (the "**ICC Rules**")[9] (ICC Rules, Art. 6, Cl. 2); or (ii) the parties agree post-dispute that they wish to resolve their dispute via ICC arbitration.

13. Examples of how the ICC Court administers arbitrations include: (i) deciding whether to accept an arbitration in certain circumstances (ICC Rules, Art. 6, Cl. 4); (ii) confirming the appointment of a single arbitrator or an arbitral panel (hereinafter, the "**arbitral tribunal**") (*see generally* ICC Rules, Art. 13); (iii) resolving challenges to an arbitrator's independence (ICC Rules, Art. 14, Cl. 3); and (iv) approving the form of the arbitral award (*i.e.*, the decision of the arbitral tribunal and its award, if any, of damages) (ICC Rules, Art. 34).

14. ICC arbitrations are otherwise controlled by the parties and the arbitral tribunal in accordance with the ICC Rules and in conformity with applicable procedural law. ICC Rules, Art. 19. The arbitral tribunal will, among other things: (i) request and receive evidence from the parties in the form of documents, fact witness testimony and expert opinion testimony (ICC Rules, Art. 25); (ii) oversee arbitration hearings (ICC Rules, Art. 26, Cl. 3); and (iii) make a reasoned draft award which is submitted for approval to the ICC Court (ICC Rules, Arts. 32 & 34).

---

[8] *ICC International Court of Arbitration*, ICC INTERNATIONAL CHAMBER OF COMMERCE, https://iccwbo.org/dispute-resolution-services/icc-international-court-arbitration/ (last accessed Oct. 31, 2019).

[9] ICC Arbitration Rules (Mar. 1, 2017), https://iccwbo.org/content/uploads/sites/3/2017/01/ICC-2017-Arbitration-and-2014-Mediation-Rules-english-version.pdf.pdf (last accessed Oct. 31, 2019).

15. A party may initiate an ICC arbitration by submitting a request for arbitration setting forth, *inter alia,* a description of the nature and circumstances of its dispute. ICC Rules, Art. 4, Cl. 3. The respondent must file an answer and any counterclaims. ICC Rules, Art. 5, Cl. 1. Based on: (i) the ICC Rules; and (ii) my experience as a legal practitioner in arbitrations administered by the ICC, the parties will then typically have a case management conference with the arbitral tribunal to agree upon a procedural timetable, which typically includes the submission of: (a) detailed statements of their claims, defenses and counterclaims with the relevant documentation attached; (b) fact witness statements; and (c) expert opinions they wish to put before the arbitral tribunal. As noted above, the Tribunal in the ICC Proceeding has already issued such a timetable, set out in the Procedural Order.

16. At the arbitration hearing itself, the parties will typically cross-examine fact witnesses on their written direct testimony and expert witnesses on their written opinion/report. The arbitral tribunal will typically also pose questions to the fact and expert witnesses.

17. The final arbitral award, as drafted by the arbitral tribunal and affirmed by the ICC Court, is "binding on the parties" because "[b]y submitting the dispute to arbitration under the Rules, the parties […] [are] deemed to have waived their right to any form of recourse insofar as such waiver can validly be made." ICC Rules, Art. 35, Cl. 6.

18. Since Dechert will not be a party to the ICC Proceeding, Iraq Telecom cannot obtain the Requested Discovery through the Tribunal, which lacks jurisdiction over Dechert.

19. I note that the arbitration legislation in certain jurisdictions (such as England) allows a party and/or arbitral tribunals to seek the assistance of a national court to order disclosure of documents by third parties for use in arbitral proceedings.

20.     However, I understand that there is no equivalent provision in the law of the Dubai International Financial Centre (the "**DIFC**"), which is the legal seat of the ICC Proceeding. As a consequence, there is no national court option to seek the Requested Discovery at the legal seat of the ICC Proceeding (i.e., the DIFC).

### III.   ICC RULES PERTAINING TO DISCOVERY AND THE DISCLOSURE OF EVIDENCE

21.     Arbitral tribunals may consider documents, fact witness testimony and expert opinion testimony when evaluating the matter and rendering the arbitral award. ICC Rules, Art. 25. The ICC Rules, however, do not set forth specific requirements or prohibitions relating to discovery and evidence, including: (i) obtaining documents from opposing parties, third parties, or foreign jurisdictions; or (ii) submitting evidence to the arbitral tribunal.[10]

22.     In addition, the ICC Rules do not contain rules of evidence. Arbitral tribunals have great discretion to rule on admissibility and, in my experience, generally allow evidence into the record with the battle lines drawn over the weight to be attributed to it. Importantly, therefore, the ICC Rules do not prohibit the arbitral tribunal from considering documents and information obtained from third parties abroad including law firms, such as the Requested Discovery.

### IV.   ICC RULES PERTAINING TO EVIDENCE GATHERED FROM FOREIGN AND INTERNATIONAL TRIBUNALS

23.     As noted, the ICC Rules do not preclude or prohibit the use of evidence obtained abroad. In other words, there is no prohibition under the ICC Rules for arbitral tribunals to consider evidence collected from foreign jurisdictions, including evidence lawfully gathered abroad by foreign courts or through foreign litigation. Thus, and consistent with my experience,

---

[10]    The ICC Rules state: "The arbitral tribunal shall proceed within as short a time as possible to establish the facts of the case by all appropriate means." ICC Rules Art. 25, Cl. 1. The ICC Rules also note that "[a]t any time during the proceedings, the arbitral tribunal may summon any party to provide additional evidence." ICC Rules Art. 25, Cl. 5.

barring evidence of illegality or failure to comply with procedural orders, arbitral tribunals do not ordinarily concern themselves with how evidence is obtained and will be receptive to evidence lawfully gathered in jurisdictions outside the seat of the arbitration.

24.     In this regard, I note that, to date, respondents in the ICC Proceeding have not lodged any objection with the Tribunal to the use of evidence (to be) obtained by Iraq Telecom in connection with a separate, but related, 1782 application filed by Iraq Telecom that was granted by the Southern District of New York in August 2019.[11]

* * *

---

[11]     Opinion & Order, *In re Ex Parte Application of Iraq Telecom Ltd.*, No. 18-mc-00458-LGS-OTW (S.D.N.Y. Aug. 13, 2019).

I declare under penalty of perjury under the laws of the United States and England that the foregoing is true and correct to the best of my knowledge and belief.

Executed in London, England, on October 31, 2019.

_____

Cyrus Benson