# APPENDIX B

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE:

EX PARTE APPLICATION OF
IRAQ TELECOM LIMITED FOR AN
ORDER TO OBTAIN DISCOVERY FOR
USE IN FOREIGN PROCEEDINGS
PURSUANT TO 28 U.S.C. § 1782

Case No. _____

## DECLARATION OF EHAB FEKRI AZIZ BASSILIOS

Pursuant to 28 U.S.C. § 1746, I, Ehab Fekri Aziz Bassilios, declare under penalty of perjury as follows:

1. I am a director of Iraq Telecom Limited ("**Iraq Telecom**"), as well as a director of International Holdings Limited ("**IHL**"), the entity through which Iraq Telecom invested more than USD 800 million in return for an indirect 44 percent interest in Korek Telecom Company LLC ("**Korek**").

2. I submit this declaration in support of the *ex parte* application submitted by Iraq Telecom for an order to obtain discovery for use in a foreign proceeding pursuant to 28 U.S.C. § 1782 from Dechert LLP ("**Dechert**") in the Eastern District of Pennsylvania (the "**Application**").

3. As a director of Iraq Telecom and IHL, I am familiar with the information set forth in this declaration from (i) personal knowledge; (ii) documents I have prepared and/or reviewed; and/or (iii) information obtained during the course of Iraq Telecom's investigation into these matters. Because I submit this declaration specifically in support of the Application, it does not contain each and every fact within my knowledge regarding the topics discussed herein.[1]

---

[1] I also certify that the exhibits attached hereto are true and correct copies of the original documents. The translations provided are courtesy and have not been certified.

4.     I understand that Iraq Telecom seeks information, documents and testimony from Dechert relating to the purchase of two properties in the United Kingdom (the "**UK Properties**"), in 2014 and 2016 respectively, by business associates of Raymond Rahmeh ("**Mr. Rahmeh**"), including but not limited to (i) the identity of the individual(s) who engaged Dechert to purchase the UK Properties on behalf of the true buyers(s), including but not limited to the identity of the true buyer; (ii) the date upon which that individual and/or the true buyers engaged Dechert; and (iii) the source of funds used to purchase the UK Properties (the "**Requested Discovery**").

5.     I further understand that the Requested Discovery is for use in (i) a pending arbitration administered by the International Chamber of Commerce ("**ICC**") (the "**ICC Proceeding**"); and (ii) a contemplated proceeding in the English High Court of Justice, Business and Property Courts of England and Wales, Queen's Bench Division, Commercial Court (the "**UK Proceeding**") (collectively, the "**Foreign Proceedings**").

**I.     KOREK TELECOM COMPANY LLC**

6.     Korek is an Iraqi telecommunications limited liability company incorporated with the Registration Directorate of Companies with the Kurdistan Regional Government in the Republic of Iraq. Korek began operations in 2000 and was initially licensed to provide mobile telecommunications services only to the Kurdistan region.

7.     In 2007, however, Korek obtained a nationwide mobile telecommunications license (the "**License**") through an agreement with the Iraqi Communications and Media Commission (the "**CMC**"), the government agency responsible for mobile telephone regulation and licensing (the

"**License Agreement**").[2]  The License permitted Korek to expand its network from Kurdistan to all of Iraq.

## II.     KOREK'S SHAREHOLDERS AND INVESTORS

8.      Korek's original shareholders were three Iraqi citizens:  (i) Sirwan Saber Mustafa (also known as and referred to herein as "**Mr. Barzani**"); (ii) Jawshin Hassan Jawshin Barazany ("**Mr. Barazany**"); and (iii) Jiqsy Hamo Mustafa ("**Mr. Hamo Mustafa**") (together, the "**Iraqi Shareholders**").  These three individuals held 100 percent of Korek's shares until 2007, when Korek obtained the License.

9.      Under the terms of the License Agreement, Korek was required to pay the CMC a fee of USD 1.25 billion, payable in a number of installments, together with interest on unpaid installments.[3]

10.     The License Agreement also contained a change-of-control provision requiring the CMC's consent for any direct or indirect change in the control of 10 percent or more of Korek's shareholding.[4]

11.     Because Korek lacked sufficient funds to pay the second installment of the License fee, it sought external funding.  In September 2007, Agility Public Warehousing Company K.S.C.P. ("**Agility**") offered to provide this external funding to Korek though a convertible senior loan note valued at USD 250 million guaranteed by the Kurdistan Regional Government of Iraq. Agility transferred these funds directly from its own bank account to that of the CMC.

---

[2]     See **Ex. 1**, CMC Mobile Telecommunications Services License Agreement (Aug. 30, 2007) ("**License Agreement**").

[3]     See **Ex. 1**, License Agreement, at IV.A.

[4]     See **Ex. 1**, License Agreement, at XXIV.C.

3

12. Recognizing that Korek would require additional financial and technical support to expand its services to other parts of Iraq, in late 2009, Agility identified Orange, S.A. ("**Orange**"), formerly France Télécom S.A., a French multinational telecommunications corporation, as a potential investor. In 2011, Agility and Orange formed Iraq Telecom, a joint venture through which they invested more than USD 800 million into Korek.[5] In connection with the investment, Agility and Orange obtained an indirect interest of 44 percent in Korek.

13. Iraq Telecom's investment in Korek was part of a large scale reorganization of Korek's ownership structure, which took place in July 2011 (the "**Investment Transaction**"). The Investment Transaction, which is described more fully in the attached exhibits, entailed the following:

    i. 100 percent of Korek's shares were transferred to IHL, a Dubai International Financial Centre ("**DIFC**") holding company;[6]

    ii. Iraq Telecom, a private DIFC company, received a 44 percent interest in IHL, and thereby an indirect 44 percent interest in Korek; and

    iii. Korek International (Management) Ltd. ("**CS Ltd**"), the Cayman Islands company established by the Iraqi Shareholders, received the remaining 56 percent interest in IHL, and thereby an indirect 56 percent interest in Korek.[7]

---

[5] Agility's interest in Iraq Telecom is held indirectly via a number of holding entities including Alcazar Capital Partners, a Cayman Islands entity, among others. Orange's interest is also held indirectly via a number of holding entities, including Atlas Services Nederland B.V., a Netherlands entity, among others.

[6] Pursuant to a decree issued in March 2019, discussed further *infra* at ¶¶ 33-35, IHL's shareholding has been de-registered.

[7] Mr. Barzani is the single largest indirect shareholder of Korek, as he holds a 75 percent interest in CS Ltd, and thus holds a 42 percent indirect interest in Korek. *See* **Ex. 2**, Letter from Korek to the CMC (Apr. 25, 2013) (showing that Sirwan Saber Mustafa (aka Mr. Barzani) holds a 75 percent interest in CS Ltd). I also understand that on or around the time of the Investment Transaction Aso Ali ("**Mr. Ali**") acquired an interest in CS Ltd and that CS Ltd is jointly owned by the Iraqi Shareholders and Mr. Ali. *See id.*

14. As part of the Investment Transaction, Iraq Telecom also extended a USD 285 million loan to IHL (the "**Iraq Telecom Shareholder Loan**"). IHL, in turn, provided this loan to Korek through a back-to-back shareholder loan agreement dated July 27, 2011. Also on July 27, 2011, Korek provided a guarantee to Iraq Telecom guaranteeing IHL's obligations to Iraq Telecom under the Iraq Telecom Shareholder Loan.

15. Pursuant to the change-in-control provision in the License Agreement, Korek sought and ultimately obtained the CMC's consent to the proposed investment by Agility and Orange into Korek.[8]

16. The relationship between Korek's investors, which are at issue in foreign proceedings throughout the world,[9] is governed, in part, by a March 10, 2011 shareholders' agreement between IHL, Korek, Mr. Barzani, CS Ltd and Iraq Telecom (the "**IHL Shareholders' Agreement**").[10]

17. The IHL Shareholders' Agreement, along with IHL's Articles of Association, provided for the creation of a seven-member board of directors, including (i) three directors nominated by Iraq Telecom; (ii) three directors nominated by CS Ltd; and (iii) one purported independent director also nominated by CS Ltd (the "**Independent Director**"). At this time, the three directors of CS Ltd included Abdulhameed Abdullah Mohammed Salih Aqrawi ("**Mr. Aqrawi**"), Nozad Hussein Jundi ("**Mr. Jundi**"), and Mr. Barzani. Mr. Barzani is also the

---

[8] *See* **Ex. 3**, Letter from Korek to the CMC (Mar. 13, 2011); *see also* **Ex. 4**, Letter from Korek to the CMC (June 5, 2011).

[9] In response to misconduct by Messrs. Barzani and Rahmeh, Iraq Telecom has commenced multiple legal proceedings against them and others around the world, including (i) litigation in the DIFC Courts; and (ii) an arbitration administered by the Lebanese Arbitration and Mediation Centre of the Chamber of Commerce, Industry and Agriculture of Beirut and Mount-Lebanon.

[10] *See* **Ex. 5**, IHL Shareholders' Agreement (Mar. 10, 2011).

Chairman of the IHL Board. Mr. Rahmeh is the purported Independent Director nominated by CS Ltd.[11]

18. As an Iraqi LLC, Korek is managed by a sole director or "Statutory Manager," rather than a board of directors. In July 2011, IHL (in its capacity as Korek's sole shareholder), appointed Mr. Barzani as the Statutory Manager following the Investment Transaction.

19. Korek is also managed by the Korek Supervisory Committee (the "**KSC**"), a seven-member body responsible for the overall direction and management of Korek.[12]

### III. THE CALL OPTION

20. As part of the Investment Transaction, the parties (i.e., the Iraqi Shareholders, Agility and Orange) agreed to an option, commencing in January 2014, permitting Agility and Orange to acquire further shares in Korek so as to give them an aggregate holding of 51 percent of Korek (i.e., majority control of the Company) (the "**Call Option**").[13]

21. The Call Option provided Iraq Telecom two windows to exercise the option with the purchase price differing depending on the window: (i) January 1, 2014 to June 30, 2014; and (ii) July 1, 2014 to December 31, 2014.[14]

---

[11] Despite his designation as an "independent" director, Mr. Rahmeh is closely affiliated with CS Ltd and Mr. Barzani, representing their interests in a number of situations including IHL board meetings and dispute resolution proceedings between Iraq Telecom, CS Ltd and Mr. Barzani, including acting as a Chairman of various meetings.

[12] The seven members of the KSC also serve on the board of IHL, which, in 2011, became the sole shareholder of Korek. *See supra* at ¶ 13.

[13] *See* **Ex. 5**, IHL Shareholders' Agreement, at Clause 23.

[14] *See id.* at Clauses 23.2(a)-(b).

22. As the License Agreement only required the CMC's consent for a direct (or indirect) change in the control of 10 percent or more of Korek's shareholding,[15] no additional CMC consent was required should Iraq Telecom exercise the Call Option.

### IV. KOREK THRIVES BETWEEN 2011 AND 2013

23. With the benefit of Agility's and Orange's investment of more than USD 800 million as well as contribution of know-how and telecommunication expertise, Korek began to thrive, including by expanding its network, doubling its number of stations from 1,000 to 2,000 and more than doubling the number of its subscribers with an additional 2.7 million new subscribers over the relevant period.[16]

24. Korek's revenues increased from USD 351 million in 2010 to approximately USD 692 million in 2013.[17]

### V. CMC HOSTILITY TOWARDS AGILITY AND ORANGE

25. Between December 2013 and January 22, 2014,[18] the CMC sent a number of increasingly aggressive letters to Korek.

26. On May 29, 2014, Orange publically declared its intention to exercise the Call Option.[19]

---

[15] See **Ex. 1**, License Agreement, at Clause XXIV(C).

[16] See **Ex. 6**, Letter from Korek to the CMC at 1 (Jan. 22, 2014).

[17] See id.

[18] See, e.g., **Ex. 7**, Letter from the CMC to Korek (Dec. 10, 2013); **Ex. 8**, Letter from the CMC to Korek (Jan. 16, 2014).

[19] See **Ex. 9**, *Orange aims to boost Korek, Meditel stakes to over 50% - CEO*, TELECOMPAPER (May 29, 2014), https://www.telecompaper.com/news/orange-aims-to-boost-korek-meditel-stakes-to-over-50-ceo--1016498.

27. Less than two weeks later, on June 10, 2014, the CMC sent Korek a letter claiming that Korek was no longer an Iraqi company (the "**June 10, 2014 Letter**").[20]

28. In support of this contention, the CMC claimed that (i) the ultimate beneficial ownership of Korek was not held at 51 percent or more by Iraqi citizens (although 56 percent of its shares were, in fact, held by the Iraqi Shareholders); and (ii) Korek's management had been assigned to Agility and Orange (even though the day-to-day control of Korek's business is retained by the Iraqi Shareholders and Mr. Barzani in particular).[21]

29. In the June 10, 2014 Letter, the CMC further demanded that Korek pay more than USD 43 million because of an increased regulatory fee based on Korek's supposed foreign ownership.[22]

30. The CMC did not send the June 10, 2014 Letter to either Agility or Orange.[23]

## VI. CMC DECLARED THE INVESTMENT TRANSACTION NULL, VOID AND INVALID

31. On June 19, 2014, Dr. Safa Aldin Rabee ("**Dr. Rabee**"), at the time, the CMC Director General (i.e., Chief Executive), sent a memorandum to the CMC Board of Commissioners proposing "to revoke the principle of partnership between Korek and France Telecom [Orange]/Agility."[24] Then, on July 2, 2014, the CMC sent Korek another letter which sought, among other things, to strip Agility and Orange of their shares in Korek and return them to the Iraqi Shareholders (the "**CMC Order**").[25]

---

[20] **Ex. 10**, Letter from the CMC to Korek (June 10, 2014) (the "**June 10, 2014 Letter**").

[21] *Id.*

[22] *See id.*

[23] *See id.*

[24] **Ex. 11**, Memorandum from Safa Aldin Rabee to the CMC Board (June 19, 2014).

[25] **Ex. 12**, Letter from the CMC to Korek at 1 (July 2, 2014) (the "**CMC Order**").

32.     On November 5, 2014, Iraq Telecom exercised the Call Option.[26] Just five days later, Mr. Barzani caused Korek to enter into an addendum to the License Agreement with the CMC,[27] which introduced new stringent change of control provisions into the License Agreement. CS Ltd has since sought to rely on this addendum to the License Agreement to resist completion of the Call Option.

## VII.    DECREE 4961

33.     In April 2019, Agility and Orange learned that on March 19, 2019, the Erbil Directorate of Companies of the Ministry of Industry and Trade issued Administrative Decree No. 4961, which purported to implement the CMC Order ("**Decree 4961**").

34.     Decree 4961, however, only represents a *partial* implementation of the CMC Order, as it does not "*reinstate the status as it was on 13/3/2011*", as required by the CMC Order.[28]

35.     To do so requires, among other things, returning all funds invested directly and indirectly by Agility and Orange in Korek.

## VIII.   CONTEMPLATED UK PROCEEDING

36.     The Requested Discovery is for use in the UK Proceeding, a contemplated proceeding in the English High Court of Justice Commercial Court, as well as the ICC Proceeding.

37.     In the UK Proceeding, Iraq Telecom intends to bring claims against Dr. Rabee and Dr. Ali Nasser Alwan Al-Khwildi ("**Dr. Al-Khwildi**"), the CMC's Director General and former President of the CMC's Council of Trustees, for losses and damages resulting from their unlawful

---

[26]    *See* **Ex. 13**, Call Exercise Notice from Iraq Telecom to CS Ltd (Nov. 5, 2014); *see also* **Ex. 14**, Call Exercise Notice from Alcazar Capital Partners to Iraq Telecom (Nov. 3, 2014).

[27]    *See* **Ex. 15**, Email Exchange between Louis Abou Charaf and the KSC. (Nov. 5-9, 2014).

[28]    *See* **Ex. 12**, CMC Order at 1.

acts, including that they accepted bribes in the form of cash, real estate and other gifts in exchange for taking actions adverse to Iraq Telecom, including by issuing the CMC Order.

38. Iraq Telecom intends to file the UK Proceeding in short order upon the completion of its investigation relating to the corrupt issuance of the CMC Order and other related matters. Indeed, Iraq Telecom has engaged Quinn Emanuel Urquhart & Sullivan LLP ("**Quinn Emanuel**") to prepare this claim and, to my knowledge, Quinn Emanuel has expended significant time working on the claim.

\* \* \*

I declare under penalty of perjury under the laws of the United States and Kuwait that the foregoing is true and correct to the best of my knowledge and belief.

Executed in Kuwait City on this date _____31-Oct19_____ .

_____

Ehab Fekri Aziz Bassilios

11