IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: : | |
| EX PARTE APPLICATION OF IRAQ : | MISCELLANEOUS ACTION |
| TELECOM LIMITED FOR AN ORDER : | |
| TO OBTAIN DISCOVERY FOR USE IN : | NO. 19-175 |
| FOREIGN PROCEEDINGS PURSUANT : | |
| TO 28 U.S.C. § 1782 : | |

**MEMORANDUM**

**SURRICK, J.**                                                                                     **NOVEMBER 5, 2021**

Iraq Telecom Limited initiated this action by filing an *ex parte* Application pursuant to 28 U.S.C. § 1782. The Application sought an order to obtain limited discovery from Dechert LLP for use in a foreign proceeding. The discovery sought by Iraq Telecom involves an alleged fraud perpetrated by Dechert's clients. The Court granted the Application on December 9, 2019. Numerous documents were produced to Iraq Telecom and many others were withheld on the basis of privilege. In this Motion, Iraq Telecom moves to compel production of the documents claimed to be privileged. (ECF No. 12.) For the reasons set forth below, the Motion will be granted in part and denied in part. All the documents listed in the privilege log, except for three, are not protected by any privilege and must be produced to Iraq Telecom.

**I.      BACKGROUND**

Iraq Telecom seeks documents to support its allegation that it was the victim of a corrupt scheme to divest it of its investment made into the telecommunications industry in Iraq. Specifically, Iraq Telecom invested eight hundred million dollars in Korek, an Iraqi telecommunications company. Iraq Telecom became a joint owner in Korek with Sirwan Saber Mustafa Barzani and other shareholders. Iraq Telecom contends that Barzani and other shareholders stole its investment in Korek. It alleges that this theft was facilitated by corrupt

Iraqi government telecommunications industry officials who solicited and accepted payments and gifts from the shareholders in exchange for adverse actions taken against Iraq Telecom.

Part of the scheme involved the purchase of two residential properties in the United Kingdom by nominee buyers:  Pierre Gergi Boutros Youssef and Mansour Farid Succar.  Dechert represented Youssef and Succar (hereinafter referred to as the "Clients") with respect to the purchase of the UK properties.  Iraq Telecom alleges that Youssef and Succar were sham buyers and that the UK properties were actually purchased for the benefit of two Iraqi government in exchange for regulatory decisions that were monetarily harmful to Iraq Telecom.

Seeking additional information to corroborate what it believed to be a fraud, on November 5, 2019, Iraq Telecom sought an *ex parte* Application for judicial assistance pursuant to 28 U.S.C. § 1782 (the "1782 Application").  The 1782 Application sought non-party discovery from Dechert for use in two foreign proceedings:  (1) a pending arbitration administered by the International Chamber of Commerce; and (2) a contemplated proceeding in the United Kingdom.  On December 9, 2019, the Court granted the 1782 Application.  (ECF No. 11.)

Thereafter, Iraq Telecom served Dechert with the two subpoenas:  one for documents, and one for testimony.  Only the subpoena for documents is at issue in this Motion.  Instead of producing documents pursuant to the subpoena, Dechert notified its Clients, Youssef and Succar, about its receipt of the subpoenas.  Concerned about protecting their privilege rights, the Clients retained new counsel to review documents at Dechert's London office.  On February 20, 2020, the new legal counsel for Youssef and Succar entered an appearance in this case.  Once they appeared, they did not object to the 1782 Application.  Nor did they move to quash or vacate the Court's Order granting the 1782 Application.  Instead, the Clients—through their newly retained counsel—made several productions of documents pursuant to the subpoenas.  Iraq Telecom has

already received 722 documents from the Clients. A dispute arose only when Iraq Telecom learned that numerous documents were not produced based on privilege. The Clients conceded that numerous documents were withheld but refused to produce a privilege log, contending that it was too expensive. When Iraq Telecom agreed to cover the expense of preparing a privilege log, it received a privilege log showing that 467 documents relating to the UK properties were withheld from production based on privilege. The documents are predominantly emails between Dechert and other individuals involved in the UK real estate closings. The Clients contend that the English "legal professional privilege" and the American attorney-client privilege apply to the withheld documents. Significantly, the Clients were only recipients of three of the 467 documents. Believing that the documents are not privileged, Iraq Telecom requests the Court to compel Dechert to produce the documents listed in the privilege log.

## II.    DISCUSSION

Iraq Telecom argues that the 467 documents in the privilege log are not privileged and should be turned over. It contends that neither the attorney-client privilege nor the English legal professional privilege applies to the documents, and that even if they did, the crime-fraud exception requires production. The Clients raise two arguments in opposition to producing the documents.[1] They contend that (1) Iraq Telecom has not satisfied the requirements of § 1782, and (2) the English Legal Professional Privilege shields the documents from production. As set forth below, both arguments lack merit.

---

[1] Dechert—the target of the subpoenas—takes no position with respect to the privilege of the documents Iraq Telecom seeks to compel. (*See* ECF No. 23.)

### A. The Clients' Substantive Attack on the § 1782 Application is Waived and Otherwise Unsupported by Law

The purpose of 28 U.S.C. § 1782 is "to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004). Under 28 U.S.C. § 1782(a), "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation." 28 U.S.C. § 1782(a). The statute further provides that "[a] person may not be compelled to . . . produce a document or other thing in violation of any legally applicable privilege." *Id*. The party opposing production—here, the Clients—has the burden in demonstrating that production is not proper under § 1782. *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 190 (3d Cir. 1999).

The Clients argue that Iraq Telecom has failed to meet the requirements of § 1782 in two significant ways. First, they contend that the Court lacks personal jurisdiction over them and therefore Iraq Telecom is precluded from obtaining the requested discovery. Second, they contend that Iraq Telecom has not demonstrated that the documents it seeks are for use in a foreign tribunal. These arguments are untimely and waived. The Clients had ample opportunity to challenge the § 1782 Application itself. Counsel for the Clients entered his appearance in this case over a year and a half ago. Neither the Clients nor Dechert challenged the Court's Order granting the 1782 Application. They never sought to quash the subpoenas and never raised an objection.[2] Rather, the Clients produced documents subject to the subpoena, effectively waiving

---

[2] In fact, our December 5, 2019 Order granting the 1782 Application stated that Dechert—the target of the subpoena—"shall have 14 days from the date on which the subpoenas are served to move to quash or modify the subpoenas or otherwise seek relief from the Court in accordance with Rule 45." (ECF No. 11.) Neither Dechert nor the Clients moved to quash or modify the subpoenas.

any challenges they had to the 1782 Application itself. Any attempt to vacate or quash our Order now would be untimely. *See City of St. Petersburg v. Total Containment, Inc.*, No. 06-20953, 2008 WL 1995298, at *2 (E.D. Pa. May 5, 2008) (denying motion to quash as untimely where party filed motion one day after compliance date); *In re Keebaugh*, No. 19-163, 2019 WL 5802703, at *2 (E.D. Pa. Nov. 6, 2019) (explaining that courts generally require motions to quash be made before the date of compliance and that 14 days is "presumptively reasonable"). The proposed time for compliance in the subpoenas directed to Dechert was one month. Accordingly, the time for compliance lapsed over a year ago.

Even if the Client's substantive arguments attacking the 1782 Application were not waived, they would nevertheless be rejected as lacking in merit. First, it is the target of the discovery—here, Dechert—that governs for purposes of assessing personal jurisdiction under § 1782. *See* 28 U.S.C. § 1782(a) ("The district court of the district *in which a person resides or is found* may order him . . . to produce a document or other thing for use in a proceeding in a foreign or international tribunal.") (emphasis added); *see also Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 244 (2d Cir. 2018) (rejecting argument the court lacks jurisdiction over the foreign client of a law firm and compelling the law firm to produce documents subject to a 1782 petition); *In re Mare Shipping Inc.*, No. 13-238, 2013 WL 5761104, at *3 (S.D.N.Y. Oct. 23, 2013), aff'd sub nom. *Mare Shipping Inc. v. Squire Sanders (US) LLP*, 574 F. App'x 6 (2d Cir. 2014) ("Courts in this district have found that for purposes of a section 1782 claim, it is sufficient that a respondent law firm resides in this district, even if the real party in interest, the client, resides elsewhere.").

Second, Iraq Telecom has demonstrated that the documents it seeks are intended for use in a foreign tribunal. Iraq Telecom plans to use the documents in a pending arbitration

5

administered by the International Chamber of Commerce ("ICC").[3]  The Clients contend that the ICC is a private arbitration panel that does not constitute a "foreign tribunal" under § 1782.  We disagree.  In a well-reasoned opinion, the Sixth Circuit recently analyzed the procedural history of § 1782, the definition and use of the word "tribunal," and Supreme Court precedent in arriving at the conclusion that a private arbitration before the Dubai International Financial Centre-London Court of International Arbitration was a "foreign or international tribunal" under § 1782.  *In re Application to Obtain Discovery for Use in Foreign Proceedings*, 939 F.3d 710, 715 (6th Cir. 2019).  Other courts have reached similar conclusions.  *See e.g.*, *In re Babcock Borsig AG*, 583 F. Supp. 2d 233, 238 (D. Mass. 2008) (holding that an ICC arbitration is a "tribunal" under § 1782 where "[t]he parties agree that the ICC has the authority to hear the dispute . . . , to weigh evidence, and to issue a decision that is binding on the parties"); *In re Application of Chevron Corp.*, No. 10-209, 2010 WL 5173279, at *4 (E.D. Pa. Dec. 20, 2010), rev'd on other grounds sub nom, *In re Chevron Corp.*, 650 F.3d 276 (3d Cir. 2011) ("[T]his court concludes that more recent authority supports the contention that international arbitrations, such as the BIT

---

[3] The ICC is an international business organization that facilitates dispute resolution through the ICC Court of International Arbitration.  (*See* Benson Decl. ¶ 11-12, 1782 Application, ECF No. 1.)

6

arbitration, are included [in the scope of § 1782].").[4]  The ICC arbitration therefore qualifies as a foreign tribunal for purposes of § 1782.[5]

Accordingly, the Clients' belated attempts to undermine the Court's grant of Iraq Telecom's § 1782 Application—even if not waived—are unavailing.

> **B.     The Clients Failed to Meet Their Burden of Establishing that the English Legal Professional Privilege Applies to Withheld Documents**

The Clients also argue that the documents sought by Iraq Telecom are protected by privilege and cannot be produced.  Section 1782(a) provides that "[a] person may not be compelled . . . to produce a document or other thing in violation of any legally applicable privilege."  29 U.S.C. § 1782(a).  In the context of § 1782, parties may rely on foreign privileges to shield information from discovery.  *Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373, 378 (5th Cir. 2010).  The party raising application of foreign law has "the burden of adequately proving foreign law to enable the court to apply it in a particular case."  *Bel-Ray Co. v. Chemrite Ltd.*, 181 F.3d 435, 440-41 (3d Cir. 1999).

The Clients contend that the applicable privilege here is the Legal Advice Privilege, a type of English professional privilege.  Iraq Telecom does not dispute that the United Kingdom

---

[4] We are aware that other courts have reached the opposite conclusion.  *See, e.g.*, *In re EWE Gasspeicher GmbH*, No. 19-109, 2020 WL 1272612, at *3 (D. Del. Mar. 17, 2020) (finding private arbitration not a "tribunal" within the meaning of § 1782); *El Paso Corp. v. La Comision Ejecutiva Hidroelectrica Del Rio Lempa*, 341 F. App'x 31, 33 (5th Cir. 2009) (reaffirming earlier precedent that a private international arbitration is not a "tribunal" within the meaning of § 1782).  The Third Circuit has not yet weighed in on this issue.  We are persuaded by the reasoning from the Sixth Circuit and other courts, which have concluded that arbitration panels like the ICC fall within the scope of § 1782.

[5] Iraq Telecom also intends to bring a claim in the English High Court of Justice, Business and Property Courts of England and Wales, Queen's Bench Division, Commercial Court, against various individuals involved in the alleged fraud.  We need not address whether this contemplated but not-yet-filed claim meets the requirement under § 1782(a) that the discovery be sought for use in a foreign tribunal.  We have already determined that the pending ICC arbitration is sufficient for purposes of § 1782(a).

7

has an interest in the application of its law. Nor does Iraq Telecom take issue with reference to foreign law to resolve this privilege issue. Rather, Iraq Telecom contends that the Clients have not met their burden in demonstrating that the Legal Advice Privilege protects the documents in the privilege log from disclosure. We agree.

Generally, like the American attorney-client privilege, the English Legal Advice Privilege protects "all communications made in confidence between solicitors and their clients for the purpose of giving or obtaining legal advice." *Three Rivers District Council and others v. Governor and Company of the Bank of England* (No 6) [2005] 1 AC 610 at [65] (per Lord Carswell). (*See* Clients' Mem. Ex. 12.) The Clients argue that the Legal Advice Privilege also attaches to communications involving an agent of either the lawyer or the client. Specifically, they claim that Sandy Achkouty was their agent for purposes of the privilege and thus any communications between her and Dechert are also protected. Sandy Achkouty is an employee of ZR Group, a major Lebanese conglomerate known for its role in the oil and gas industry. The Clients contends that she is an agent because she was "appointed" as a representative to communicate with Dechert on behalf of the Clients "and perform administrative tasks" relating to the purpose of the propert[ies]." (Youssef Decl. ¶ 3, Clients' Mem. Ex. 9; Succar Decl. ¶ 3, Clients' Mem. Ex. 10.) The Clients also argue that the Legal Advice Privilege is not waived when third parties participate in the communication and continues to protect communications that have simply been forwarded to attorneys.

Generally, to support claims that foreign privilege rules apply to discovery sought in the United States, "parties must provide 'authoritative proof' that a foreign tribunal would reject evidence because of a violation of an alleged foreign privilege." *Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373, 378-79 (5th Cir. 2010). Typically, this requirement is met with

sworn testimony or an affidavit from someone with knowledge of foreign law. *NML Cap., Ltd. v. Republic of Argentina*, No. 03-8845, 2013 WL 491522, at *3 (S.D.N.Y. Feb. 8, 2013); *In re Veiga*, 746 F. Supp. 2d 27, 33 (D.D.C. 2010); *In re Application for an Ord. Permitting Metallgesellschaft AG to take Discovery*, 121 F.3d 77, 80 (2d Cir. 1997). The purpose of this requirement is clear: "to avoid speculative forays into legal territories unfamiliar to federal judges." *Ecuadorian Plaintiffs*, 619 F.3d at 378 ("[A]lthough the plaintiffs have submitted an affidavit from an Ecuadorian attorney suggesting that the discovery sought by Chevron would not be available in Ecuador, they have not pointed to any judicial, executive or legislative declaration that clearly demonstrates that allowing discovery in this case would offend Ecuadorian judicial norms.").

Here, in support of their claim that the English Legal Advice Privilege applies, the Clients offer nothing more than the opinion of their American attorney and select citations to opinions from the Courts of England and Wales. Nor do the Clients offer any explanation about how the individuals who communicated with Dechert about the real estate closings were "agents" under English privilege law. This is not sufficient. The Clients have not met their burden in establishing that the documents are protected from the English Legal Advice Privilege.

Where a party fails to meet its burden in establishing application of foreign law, courts will typically apply the law of the forum. *See Bel-Ray Co.*, 181 F.3d at 141; *Nineveh Invs. Ltd. v. United States*, No. 16-1068, 2017 WL 6017681, at *2 (E.D. Pa. Dec. 5, 2017) ("[I]n the absence of sufficient proof to establish with reasonable certainty the substance of the foreign principles of law, the modern view is that the law of the forum should be applied." (quoting *Banco de Credito Indus., S.A. v. Tesoreria Gen. de la*, 990 F.2d 827, 836 (5th Cir. 1993))). In the Third Circuit,

> [t]he attorney-client privilege protects communications between attorneys and clients from compelled disclosure. It applies to any communication that satisfies

> the following elements: it must be (1) a communication (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client. 'Privileged persons' include the client, the attorney(s), and any of their agents that help facilitate attorney-client communications or the legal representation.

*In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 359 (3d Cir. 2007) (internal citations omitted).

The 467 documents in the privilege log consist mainly of emails between Dechert attorneys and other individuals involved in the real estate closings of the UK Properties. Many individuals copied on the email are from the ZR Group. Other individuals copied on the emails include representatives of the sellers' real estate agents for both properties, the surveyors of the properties, the sellers' legal counsel, and the buyers' real estate agent. The Clients claim that the documents are privileged as confidential attorney-client communications even though they are direct recipients of only three of the 467 documents in the privilege log. The Clients baldly claim that members of the ZR Group, including Sandy Achkouty, are "agents" of the Clients. The do not even address how any of the other individuals copied on the emails do not destroy the privilege.

Under privilege law in the Third Circuit, for privilege to attach to communications with a third-party, the party asserting privilege must demonstrate that the third-party disclosure was "necessary for the client to obtain informed legal advice," *see Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1423 (3d Cir. 1991), and that the agent was a "necessary intermediary." *Advanced Tech. Assocs., Inc. v. Herley Indus., Inc.*, No. 96-0132, 1996 WL 711018, at *5 (E.D. Pa. Dec. 5, 1996); *see also Louisiana Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, 253 F.R.D. 300, 311 (D.N.J. 2008) ("Although voluntary disclosure of attorney-client communications to a third-party ordinarily waives the privilege, the privilege will not be waived if the disclosure was to an agent "whose services are necessary for effective representation of the

client's interests.") (citation omitted). The Clients have made no attempt to explain how any employee from the ZR Group was necessary to their engagement of Dechert's legal services. Nor have they explained how other individuals involved in the emails, including surveyors and real estate agents were necessary for their engagement of Dechert's legal services. The documents are not protected by the American attorney-client privilege.[6]

### III. CONCLUSION

For these reasons, Iraq Telecom's Motion to Compel is granted in part and denied in part without prejudice. Dechert must produce to Iraq Telecom all documents that do not involve communication by or from Youssef or Succar. Dechert must provide to the Court for an *in camera* review the documents contained at Log No. 110, Log No. 227, and Log No. 284. Once the court reviews these documents, it will determine whether they are privileged or must also be disclosed to Iraq Telecom.

An Appropriate Order follows.

                                                            **BY THE COURT:**

                                                           */s/ R. Barclay Surrick*
                                                           **R. BARCLAY SURRICK, J.**

---

[6] Because we conclude that the documents ordered to be produced are not protected by any applicable privilege, we need not address Iraq Telecom's argument about the crime-fraud exception.