**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| IN RE:<br><br>EX PARTE APPLICATION OF IRAQ TELECOM LIMITED FOR AN ORDER TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. §1782 | MISCELLANEOUS ACTION<br><br>Case No. 19-175 |
|---|---|

**MEMORANDUM IN SUPPORT OF IRAQ TELECOM LIMITED'S MOTION FOR AN AWARD OF FEES AND COSTS AND FOR RECONSIDERATION OF THE COURT'S NOVEMBER 12, 2021 ORDER**

QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 S Figueroa St., 10th Floor
Los Angeles, CA 90017
(213) 443-3000
*kristintahler@quinnemanuel.com*

SKARZYNSKI MARICK & BLACK, LLP
One Battery Park Plaza
New York, New York, 10004
(212) 820-7700
*jsandnes@skarzynski.com*

*Counsel for Applicant, Iraq Telecom Limited*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................1

RELEVANT PROCEDURAL HISTORY ....................3

ARGUMENT ....................5

I. LEGAL STANDARD ....................5

II. IRAQ TELECOM IS ENTITLED TO REASONABLE EXPENSES ....................7

A. The Clients' Assertions of Privilege Were Baseless ....................7

B. The Clients' Delay Tactics in Producing the Logged Documents Were in Bad Faith ....................10

III. DECHERT SHOULD BE COMPELLED TO PRODUCE THE THREE DOCUMENTS ....................11

CONCLUSION ....................13

# TABLE OF AUTHORITIES

## CASES

*Bridges v. Colvin*,
136 F. Supp. 3d 620 (E.D. Pa. 2015) ....................11

*Dietz & Watson, Inc. v. Liberty Mut. Ins. Co.*,
No. Civ. 14-4082, 2015 WL 2069280 (E.D. Pa. May 5, 2015) ....................12

*In re 400 Walnut Assocs., L.P.*,
475 B.R. 217 (Bankr. E.D. Pa. 2012) ....................12

*In re Ex Parte Glob. Energy Horizons Corp.*,
647 F. App'x 83, 85–86 (3d Cir. 2016) ....................5

*In re FG Wilson (Engineering) Ltd.*,
No. 1:10-MC-20843, 2011 WL 5361073 (S.D. Fla. Nov. 7, 2011) ....................6

*In re Pioneer Corp.*,
No. 18-CV-04524, 2019 WL 5401015 (C.D. Cal. Jan. 9, 2019) ....................6

*In re Prudential Ins. Co. Am. Sales Practice Litig.*,
278 F.3d 175 (3d Cir. 2002) ....................6

*In re Teleglobe Commc'ns Corp.*,
493 F.3d 345 (3d Cir. 2007) ....................12

*Max's Seafood Café ex. Rel. Lou-Ann, Inc. v. Quinteros*,
176 F.3d 669 (3d Cir. 1999) ....................11

*Romero v. Allstate Insurance Co.*,
170 F. Supp. 3d 779 (E.D. Pa. 2016) ....................11

*Winner v. Etkin & Co.*,
No. 2:07-CV-00903, 2008 WL 5429623 (W.D. Pa. Dec. 31, 2008) ....................6

## STATUTES

28 U.S.C. § 1782(a) ....................5

28 U.S.C. § 1927 ....................6

## RULES

Fed. R. Civ. P. 37(a)(5) ....................1, 2, 5, 6, 7, 13

Fed. R. Civ. P. 45 ....................6

Applicant Iraq Telecom Limited ("**Iraq Telecom**") respectfully submits this motion for reasonable expenses pursuant to Federal Rule of Civil Procedure 37, based on this Court's order dated November 5, 2021 (ECF 51) which granted in part and denied in part Iraq Telecom's motion to compel production of documents claimed to be privileged (ECF 20) ("**Motion to Compel**") and for reconsideration of the Court's order dated November 12, 2021 (ECF 56) (the "**November 12 Order**") which ordered that the three documents submitted for the Court's *in camera* review are privileged and shall not be produced to Iraq Telecom.

## PRELIMINARY STATEMENT

As the Court is well aware, Iraq Telecom initiated this Section 1782 proceeding to seek documents to further expose the massive fraud perpetrated against it, which Iraq Telecom alleges deliberately and unlawfully deprived Iraq Telecom of its multi-hundred-million-dollar investment in Iraq. Specifically, Iraq Telecom believed and argued that the materials sought in the Application[1] were likely to further expose the alleged fraud and corruption. In particular, the documents in question stood to show that the high-level Iraqi officials responsible for critical decisions related to Iraq Telecom's investment were bribed with London-based properties with the assistance of Raymond Rahmeh ("**Mr. Rahmeh**"), Pierre Gergi Boutros Youssef ("**Mr. Youssef**"), and Mansour Farid Succar ("**Mr. Succar**", together with Mr. Youssef, the "**Clients**"), who used international law firm, Dechert LLP ("**Dechert**"), to facilitate this conspiracy.

After the Clients withheld nearly 500 documents based on purported privilege, Iraq Telecom filed the Motion to Compel contending that the privilege assertions were unavailing for specified reasons. The Court granted Iraq Telecom's Motion to Compel on November 5, 2021, ordering Dechert to produce all but three of the documents to Iraq Telecom.

---

1 All capitalized terms, unless otherwise defined herein, have the same meaning as in the Application (ECF 1-1) and Motion to Compel (ECF 20-1).

Iraq Telecom's success on the Motion to Compel, particularly when viewed in the context of the plainly frivolous privilege claims asserted by the Clients, warrants an award of costs under Rule 37. Indeed, Iraq Telecom incurred substantial expense in connection with the Motion to Compel, and the related briefing in, among other things, opposing both the Clients' inapt and waived arguments, including as to the Application itself, and their plainly dilatory request for a surreply. In addition, Iraq Telecom funded the expense of $21,000 for the Clients' counsel to prepare the privilege log in the first instance.

Now that nearly all of the previously withheld documents have been produced, Iraq Telecom can confirm that they reveal exactly what Iraq Telecom had alleged while falling far short of qualifying for any even colorable claim of privilege. Indeed, none of the documents include the Clients themselves, but instead Mr. Rahmeh and his small army of associates. Also revealed is the direct involvement of an Iraqi government official himself in 2014 and the daughter of another Iraqi government official in 2016. Moreover, the documents include wholly non-privileged materials such as wire transfer receipts, emails confirming the receipt of packages, and email correspondence arranging for the pickup of keys for one of the properties. As this Court has already found, and as confirmed by the produced documents, the assertions of privilege were groundless, and were a clear attempt to conceal devastating evidence further supporting the massive fraud against Iraq Telecom. Accordingly, Iraq Telecom moves for its reasonable costs under Federal Rule of Civil Procedure 37(a)(5).

In addition, given that the production further demonstrates that the two homes were intended for the high-ranking Iraqi government officials, not the Clients, and that Mr. Rahmeh orchestrated the bribery scheme using the Clients as nominee purchaser pawns to effectuate the purchases of the two properties, Iraq Telecom offers this new evidence to the Court to provide

valuable additional context, including as to the purpose of the engagement of Dechert. Iraq Telecom respectfully requests that the Court reconsider its original privilege determination as to the three outstanding documents in light of this new evidence, which was not available during the *in camera* review.

## RELEVANT PROCEDURAL HISTORY

After Iraq Telecom served Dechert with the Section 1782 subpoenas approved by the Court in its December 5, 2019 order granting the Application (ECF 11), Dechert represented to Iraq Telecom that it would directly produce documents on February 14, 2020. ECF 20-2 (Certification and Supplemental Declaration of Kristin N. Tahler in support of the Motion to Compel), ¶ 5. On February 14, 2020, however, the Clients surfaced for the first time with separate counsel, claiming that they needed to assess attorney-client privilege. *See id.*, ¶ 6. The Clients insisted Dechert hold the proposed production until they could re-review it under their purported theory of privilege. *See id*. Following initial productions, the Clients refused to produce a privilege log, despite the Court ordered subpoena that called for a log, claiming that the cost was unduly burdensome. *See id.*, ¶ 12. To resolve the impasse in good faith and without burdening the Court, Iraq Telecom agreed to cover costs ($21,000) in preparing the log such that necessary visibility into the withheld documents could be obtained. *See id.*, ¶ 12; *see also* Declaration of Kristin Tahler ("**Tahler Decl.**"), annexed hereto as **Appendix A**, at ¶ 4.

On October 20, 2020, the Clients' counsel produced a privilege log, which included 467 logged documents and on November 12, 2020, counsel for the Clients produced a revised privilege log (the "**Log**"), which included minor typographical corrections. ECF 20-2, ¶ 14.

The parties met and conferred regarding Iraq Telecom's significant questions and concerns as to the Log and its facial lack of a credible basis, but reached an impasse. *See id.*, ¶¶ 15-17.

On November 24, 2020, Iraq Telecom filed its Motion to Compel the production of the 467 withheld documents (ECF 20). On December 15, 2020, Dechert filed its response to the Motion to Compel (ECF 23), taking "no position on the privilege of the documents that Iraq Telecom seeks to compel." The Clients filed their opposition to the Motion to Compel on the same day (ECF 24). Iraq Telecom filed its reply in support of its Motion to Compel on January 12, 2021 (ECF 27). The Clients then sought leave to file a surreply (ECF 28), which Iraq Telecom opposed (ECF 29).

On November 5, 2021, the Court issued an order (ECF 51) (the "**November 5 Order**") compelling Dechert to produce to Iraq Telecom, within three days of the Order, all documents on the privilege log with the exception of three documents[2], which would first be produced to the Court for *in camera* review.

That same day the Clients' counsel submitted a letter (ECF 52) requesting a two-day extension to produce these documents, which he claimed was necessary to confer with his clients in Lebanon; he did not mention any possible appeal or stay request. Iraq Telecom opposed the Clients' counsel's request (ECF 53) on November 7, citing continuing concerns of delay tactics that had become familiar.

On November 8, 2021, at 10:59 a.m. Eastern Time, the Clients' counsel notified Iraq Telecom via email, for the first time, that he would be moving the Third Circuit Court of Appeals for an emergency stay of this Court's production order; a 22-page motion followed at 12:05 p.m. Eastern Time. *In re: Ex Parte Application of Iraq Telecom Limited*, No. 21-3070 (3d Cir.) ("Appeal"), ECF 3. At no time did the Clients alert the Court to their stay request or seek a stay

---

[2] The Court reviewed the documents referenced in Log Nos. 110, 227 and 284 (the "**Three Documents**") *in camera*. *See* ECF 51.

from that court, beyond seeking an extension that was granted via an order affording Dechert "until Wednesday, November 10, 2021" to make its production. ECF 54.

On November 9, 2021, Iraq Telecom filed its opposition to the motion to stay. Appeal, ECF 7. On November 10, 2021, the Third Circuit Court of Appeals denied the Clients' motion for a stay. Appeal, ECF 9.

On the same day, Dechert produced to Iraq Telecom 464 documents that were previously logged as privileged ("**November 10 Production**"). Tahler Decl. at ¶ 5. On November 11, 2021, Dechert produced to Iraq Telecom 111 documents, which were attachments to the November 10 Production (collectively with the November 10 Production, "**Privilege Log Production**"). *See id.*

On November 12, 2021, the Court ordered that the Three Documents are privileged and shall not be produced to Iraq Telecom. ECF 56.

## ARGUMENT

### I. LEGAL STANDARD

Section 1782 provides that "[t]o the extent that the order does not prescribe otherwise," discovery is to be conducted "in accordance with the Federal Rules of Civil Procedure." 28 U.S.C. § 1782(a); *see also In re Ex Parte Glob. Energy Horizons Corp.*, 647 F. App'x 83, 85-86 (3d Cir. 2016) (emphasizing Section 1782 discovery scope to be governed by Federal Rules: Section 1782 expressly incorporates the Federal Rules of Civil Procedure and the fourth factor aligns with Rules 26 and 45). This Court's order granting the Application (ECF 11) does not "prescribe" a procedure other than the Federal Rules of Civil Procedure ("FRCP"), so under the express language of Section 1782, the FRCP, including FRCP 37(a)(5) apply here.

FRCP 37(a)(5)(A) provides that whenever a motion to compel "is granted . . . the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's

reasonable expenses incurred in making the motion, including attorney's fees."[3] FED. R. CIV. P. 37(a)(5)(A); *see, e.g.*, *In re FG Wilson (Engineering) Ltd.*, No. 1:10-MC-20843, 2011 WL 5361073, at *3 (S.D. Fla. Nov. 7, 2011) (awarding expenses in a Section 1782 action pursuant to the provisions of Rule 37(a)(5)); *In re Pioneer Corp.*, No. 18-CV-04524, 2019 WL 5401015, at *7-8 (C.D. Cal. Jan. 9, 2019) (discussing the imposition of sanctions under Rule 37(a)(5) in the context of a Section 1782 proceeding, but ultimately declining to impose attorneys' fees because both parties were responsible for the dispute). While FRCP 37(a)(5) does allow a few exceptions to this provision where, for example, "nondisclosure, response, or objection was substantially justified" (*see* FED. R. CIV. P. 37(a)(5)(A)(ii)), as described herein, the exceptions are plainly inapt in the present circumstances. Given that the imposition of costs under FRCP 37(a)(5) is phrased in mandatory language unless the Court finds that the failure was substantially justified or harmless, Iraq Telecom respectfully requests an award of costs from the Court. *Winner v. Etkin & Co.*, No. 2:07-CV-00903, 2008 WL 5429623, at *5 (W.D. Pa. Dec. 31, 2008).[4]

---

[3] FRCP 37(a)(5)(A) speaks in mandatory terms about an award of fees and costs if the motion to compel is granted. FED. R. CIV. P. 37(a)(5)(A). FRCP 37(a)(5)(C) addresses the situation where a motion to compel is granted in part and denied in part, indicating that in such circumstance a fees/costs award is still appropriate depending on the circumstances. FED. R. CIV. P. 37(a)(5)(C). Here, the Motion to Compel was successful as to nearly 100% of the relief requested (ECF 51) so Iraq Telecom believes that the Motion to Compel was effectively granted and FRCP 37(a)(5)(A) ought to apply. Nevertheless, even if the more discretionary standard of FRCP 37(a)(5)(C) or the standard under FRCP 45 were applied, the circumstances of this matter and the conduct here, meet the standard for a fees and costs award under any of those rules.

[4] While Iraq Telecom is principally seeking the recovery from the Clients for their baseless Log and ensuing motion fees and costs, if the Clients having voluntarily appeared by counsel, attempt to evade the jurisdiction of this Court to avoid sanctions, or otherwise deny counsel's authority, 28 U.S.C. § 1927 provides ample authority to impose the sanction on counsel if necessary. *See In re Prudential Ins. Co. Am. Sales Practice Litig.*, 278 F.3d 175, 188 (3d Cir. 2002).

## II. IRAQ TELECOM IS ENTITLED TO REASONABLE EXPENSES

The Motion to Compel was granted (with the exception of the Three Documents), and accordingly Iraq Telecom should be entitled to reasonable expenses incurred in making the Motion to Compel, including attorney's fees, pursuant to FRCP 37(a)(5)(A), which states:

> If the motion is granted--or if the disclosure or requested discovery is provided after the motion was filed--the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.

FED. R. CIV. P. 37(a)(5)(A). None of the narrow exceptions to this rule apply here. *See* FED. R. CIV. P. 37(a)(5)(A)(i-iii). *First*, Iraq Telecom only filed the Motion to Compel after attempting in good faith to obtain the discovery without court action. *See* ECF 20-2, ¶¶ 15-17 (describing the parties' meet and confer process). *Second*, the Clients' nondisclosure of the logged documents was not "substantially justified" but instead, wholly unsupported, as this Court recognized (ECF 55) and made in bad faith to conceal inculpatory evidence. *Third*, there are no other circumstances that make an award of expenses unjust. Accordingly, this Court should award Iraq Telecom reasonable costs and expenses under FRCP 37(a)(5) including because (1) the now-produced logged documents show their clearly non-privileged nature; and (2) the Clients' delay tactics in producing the logged documents were in bad faith.

### A. The Clients' Assertions of Privilege Were Baseless

This Court recognized the Clients' privilege assertions over 464 documents "lack merit." ECF 50 at 3. Indeed, now that the logged documents have been produced, it is beyond all reproach that the Clients had no colorable claim of privilege but instead were seeking to conceal overwhelming evidence that further supports Iraq Telecom's allegations of bribery and

conspiracy.[5] Importantly, the newly produced documents leave no doubt as to Iraq Telecom's allegations that the intended owners/occupiers of the two homes were not Dechert's putative Clients, but rather Iraqi government officials and that the Clients simply served as "nominee" buyers at the behest of Mr. Rahmeh and others.

*First*, as to the Barn Hill Property, the produced documents further indicate that the house was not intended for Mr. Youssef (the purported purchaser), but instead for Dr. Nasser Alwan Al-Khwildi ("**Dr. Al-Khwildi**"), an Iraqi government official. Indeed, Dr. Al-Khwildi was personally involved in the purchase of the residence, even though Mr. Youssef was the nominee buyer.[6] For example, the "first approach for the apartment/house with the broker was through [Dr. Al-Khwildi]." *See* Tahler Decl. at Ex. 1, P-ITLSUB002775. Further, Dr. Al-Khwildi communicated directly with the seller's agent regarding the details of the property and the purchase. *See id.* at Ex. 2, P-ITLSUB002816 ("I understand that Richard [the seller's agent] has spoken with Dr Ali and advised him of the situation"). After closing, Dr. Al-Khwildi planned to pick up the keys for the property, and Dechert assisted in making such arrangements. *See id.* at Ex. 3, P-ITLSUB003896 (Dechert explaining "it would be quicker for Dr Ali to collect [the keys] from the agent's office").

*Second*, as to the Higher Drive Property, the produced documents further indicate that the residence was not intended for Mr. Succar (the purported purchaser), but, instead, for Dr. Safa Aldin Rabee ("**Dr. Rabee**"), another Iraqi government official and an alleged recipient of the bribe,

---

5 The production information herein is merely illustrative of the further evidence and its support for Iraq Telecom's allegations. This is not intended to be, nor should it be construed as, even approaching an exhaustive account of the inculpatory evidence in the Privilege Log Production.

6 *See generally* ECF 1-1, 15-16; ECF 20-1, 6-8.

and his family.[7] Notably, the new documents prove that at the beginning of the transaction, the seller's agent emailed Sandy Achkouty, an employee of the ZR Group, copying Riham Rabee, Dr. Rabee's ***daughter***, noting, among other things, that they "need a confirmed offer from Mrs Rabee detailing the amount they are offering and details of who is actually purchasing. . . ." *See id.* at Ex. 4, P-ITLSUB003192. Later during the transaction, the seller's agent "note[d] that Mrs Rabee viewed the property but it [would] be purchased in the name of Mr Succar" and "asked for more information regarding the connection between Mrs Rabee and Mr Succar." *See id.* at Ex. 5, P-ITLSUB004515.

*Third*, the documents further show that the ZR Group's oligarch, Mr. Rahmeh, a key actor in the global scheme to steal Iraq Telecom's investment,[8] managed the London-home purchases through Messrs. Youssef and Succar with Dechert's in-depth assistance. *See, e.g.*, *id.* at Ex. 1, P-ITLSUB002775 (Dechert attorney Camille Abousleiman introducing Mr. Rahmeh to colleagues as "my friend and client" to assist with the purchase of the Barn Hill Property); *id.* at Ex. 6, P-ITLSUB003187 (Sandy Ackouty, Mr. Rahmeh's representative asking Dechert to "please advise your availability for a quick call with [Mr. Rahmeh] on the subject.").

The recently produced documents evidence that Messrs. Youssef and Succar belatedly became the nominal "clients" of Dechert, but were entirely absent from the initial reach out and discussions with Dechert. For example, when the real estate agent asked Dechert for the name of the purchaser who was making the offer to buy the Higher Drive Property, Dechert was already well-involved, but did not know the answer. *See id.* at Ex. 7, P-ITLSUB004309. Instead, it was

---

7 *See generally* ECF 1-1, 17; ECF 20-1, 9-11.

8 *See generally* ECF 1-1, 4-5; ECF 20-1, 5-11. It should further be noted that Mr. Rahmeh was centrally involved in a recent final award in a related arbitration, which found that Iraq Telecom had been defrauded in a scheme part and parcel of the fraud here alleged. *See* ECF 47-1.

necessary for Dechert to send an email to check with Ms. Achkouty, a ZR Group employee, confirming "in particular who we should say is purchasing" the property. *See id*. In other words, Dechert was conveying offers to buy the property expressly authorized by Mr. Rahmeh but did not even know who to say the purported client buyer was. It was only later that it was told a name to put on the offer, for its supposed "Client."

In light of this new evidence and the clearly non-privileged nature of these documents (and other produced documents)[9] an award to Iraq Telecom for reasonable costs and expenses is justified.

### B. The Clients' Delay Tactics in Producing the Logged Documents Were in Bad Faith

Moreover, the history of the Clients' delay tactics provides further support for awarding costs. Iraq Telecom will not repeat the lengthy procedural history littered with the Clients' delays, but, as described above, the Clients appeared on the eve of Dechert's production to oppose purportedly based on privilege. ECF 20-2, ¶ 6. The Clients then refused to produce a privilege log until Iraq Telecom negotiated in good faith and finally agreed to pay for the preparation for the log to resolve the impasse without Court intervention. *See id*., ¶¶ 12-13. Again, attempting to avoid burdening the Court, Iraq Telecom attempted in good faith to resolve the plain issues inherent to the Log, but was stalemated. *See id*., ¶¶ 14-17. Once Iraq Telecom filed the Motion

[9] Other documents that were produced and previously logged include clearly non-privileged materials such as wire transfer receipts, emails confirming the receipt of packages, and email correspondence arranging for the pickup of keys for one of the properties. *See* Tahler Decl. at ¶ 6.

to Compel, the Clients attempted to drag out briefing by filing an extraordinary and plainly unnecessary request for a surreply (ECF 28, 29, 31), which was ultimately denied. ECF 57.

Even after the Court issued its November 5 Order and well aware of fast-approaching critical deadlines for Iraq Telecom, the Clients delayed with a request for an extension of production (ECF 52) before seeking a court endorsed delay in a request for an "emergency" stay to the Third Circuit Court of Appeals (and without any prior notice to Iraq Telecom) (Appeal, ECF 3), which was denied. Appeal, ECF 9.

Iraq Telecom should be awarded its costs under FRCP 37(a).

## III. DECHERT SHOULD BE COMPELLED TO PRODUCE THE THREE DOCUMENTS

The aforementioned new evidence provides important context for the Court and may further inform the Court's *in camera* analysis. A proper motion for reconsideration "must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice." *Bridges v. Colvin*, 136 F. Supp. 3d 620, 628-29 (E.D. Pa. 2015); *Max's Seafood Café ex. Rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). Iraq Telecom bases its instant request on the second ground – the availability of new evidence. While motions for reconsideration are generally "granted sparingly," they are appropriate where, as here, a party invokes pertinent evidence that was not previously available when a court issued its order. *Romero v. Allstate Insurance Co.*, 170 F. Supp. 3d 779, 783 (E.D. Pa. 2016).

Specifically, the new evidence described *supra* unequivocally supports Iraq Telecom's allegations that, among other things, high-level Iraqi officials responsible for critical decisions related to Iraq Telecom's loss of its nearly billion-dollar investment were bribed with London-based properties and that Mr. Rahmeh – a well-known Lebanese billionaire, the head of ZR Group,

and adverse Iraq Telecom counterparty – was the face of this scheme, in concert with international law firm, Dechert, and a number of his henchman, including the Clients, among others. In light of the important context derived from this new evidence that was not previously available to the Court,[10] the Court has ample basis to exercise its discretion to reconsider its original *in camera* review.

For example, the Court could readily conclude that the blanket assertion of privilege to hide plainly damaging documents constituted an abuse and a waiver. *See, e.g.*, *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 386 (3d Cir. 2007) (noting that in circumstances where "the District Court finds bad faith, willfulness, or fault" waiver of privilege may be appropriate); *see also Dietz & Watson, Inc. v. Liberty Mut. Ins. Co.*, No. Civ. 14-4082, 2015 WL 2069280, at *6 (E.D. Pa. May 5, 2015) ("As an additional sanction, the court imposes the waiver of the attorney-client privilege as to the improperly withheld documents at issue herein."); *In re 400 Walnut Assocs., L.P.*, 475 B.R. 217, 231 (Bankr. E.D. Pa. 2012).

Similarly, with the context provided by the new evidence, the Court upon reconsideration may conclude that the putative "Clients" were not actually Dechert's clients at all. They were expressly referred to in Dechert emails as nominee buyers. *See e.g.*, Tahler Decl. at Ex. 5, P-ITLSUB004515 (stating that the Higher Drive Property "will be purchased under the name of Mr. Mansour Succar"). This explains why there are only three emails out of the hundreds on the Log that even involve the "Clients." And as such, communications with them were not attorney-client communications.[11]

---

10 *See* ECF 20-1, 5-11.

11 While the Court's November 5 Order rightfully concluded that it was unnecessary in that procedural posture to reach the issue of the crime/fraud exception (ECF 50 at 11, n.6), the new evidence also strongly supports application of that exception to the Three Documents.

Thus, Iraq Telecom respectfully requests that the Court reconsider the Three Documents and that Dechert be ordered to produce them.

**CONCLUSION**

Based on the foregoing, Iraq Telecom respectfully requests that the Court award Iraq Telecom reasonable expenses, including attorney's fees, pursuant to FRCP 37(a)(5) and reconsider the November 12 Order ordering Dechert not to produce Three Documents, and compel Dechert to produce the Three Documents to Iraq Telecom.

Dated: November 26, 2021

By: */s/ Kristin N. Tahler*

QUINN EMANUEL URQUHART & SULLIVAN, LLP

Kristin N. Tahler (*admitted pro hac vice*)
865 S Figueroa St., 10th Floor
Los Angeles, CA 90017
(213) 443-3000
*kristintahler@quinnemanuel.com*

Lauren H. Dickie (*admitted pro hac vice*)
1300 I Street NW, Suite 900
Washington, D.C. 20005
*laurendickie@quinnemanuel.com*

Katy Akopjan (*admitted pro hac vice*)
51 Madison Avenue, 22 nd Floor
New York, NY 10010
*katyakopjan@quinnemanuel.com*

-and –

SKARZYNSKI MARICK & BLACK, LLP

James Sandnes
PA Bar Number: 41721
One Battery Park Plaza
New York, New York, 10004
(212) 820-7700
*jsandnes@skarzynski.com*

*Counsel for Applicant, Iraq Telecom Limited*