IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: : | |
| EX PARTE APPLICATION OF IRAQ : | MISCELLANEOUS ACTION |
| TELECOM LIMITED FOR AN ORDER : | |
| TO OBTAIN DISCOVERY FOR USE IN : | NO. 19-175 |
| FOREIGN PROCEEDINGS PURSUANT : | |
| TO 28 U.S.C. § 1782 : | |

**MEMORANDUM**

**SURRICK, J.**                                                                 **MARCH 8, 2023**

Korek International (Management) Limited, Korek Telecom Company LLC, and Mr. Sirwan Saber Mustafa (collectively, "Movants") move to intervene in this matter (ECF No. 82) and have filed an *ex parte* Application pursuant to 28 U.S.C. § 1782 (ECF No. 83). Movants seek to obtain the same discovery from Dechert LLP that Iraq Telecom was previously granted for use in foreign proceedings regarding allegations of fraud perpetrated against Iraq Telecom through its investment in Korek. For the following reasons, Movants' Motion to Intervene and their Section 1782 Application will be granted. Dechert shall produce the discovery to Movants within 10 days of the date of the accompanying order.

**I.      BACKGROUND**

This matter stems from a longstanding dispute where Iraq Telecom alleges that it was the victim of a corrupt scheme to divest it of its investment in the telecommunications industry in Iraq. Specifically, Iraq Telecom invested $800 million dollars in Korek, an Iraqi telecommunications company. Iraq Telecom became a joint owner in Korek with Sirwan Saber Mustafa Barzani and other shareholders. Iraq Telecom contends that Barzani and other shareholders stole its investment in Korek. It alleges that this theft was facilitated by corrupt

Iraqi government telecommunications industry officials who solicited and accepted payments and gifts from the shareholders in exchange for adverse actions taken against Iraq Telecom.

Part of the scheme involved the purchase of two residential properties in the United Kingdom by nominee buyers: Pierre Gergi Boutros Youssef and Mansour Farid Succar. Dechert represented Youssef and Succar (hereinafter referred to as "the Clients") with respect to the purchase of the UK properties. Iraq Telecom alleges that the Clients were sham buyers and that the UK properties were actually purchased for the benefit of two Iraqi government officials in exchange for regulatory decisions that were monetarily harmful to Iraq Telecom.

Seeking additional information to corroborate what it believed to be a fraud, on November 5, 2019, Iraq Telecom sought an *ex parte* Application for judicial assistance pursuant to 28 U.S.C. § 1782. This application sought non-party discovery from Dechert for use in two foreign proceedings: (1) a pending arbitration administered by the International Chamber of Commerce ("ICC Arbitration"); and (2) a contemplated proceeding in the United Kingdom. We granted this Application on December 5, 2019. (ECF No. 11.)

Thereafter, Iraq Telecom served Dechert with two subpoenas: one for documents and one for testimony. While Iraq Telecom initially received 722 documents from the Clients, a dispute arose when Iraq Telecom learned that 467 documents relating to the UK properties were not produced based on privilege. Iraq Telecom moved to compel Dechert to produce these documents. We reviewed the documents *in camera* and ordered Dechert to produce all but three of the documents to Iraq Telecom. Iraq Telecom has since used the produced documents in the ongoing ICC Arbitration.

## II.    DISCUSSION

Movants now seek to intervene in this matter and make a Section 1782 application to obtain the same discovery from Dechert that Iraq Telecom was previously granted.  Neither Iraq Telecom nor Dechert opposes this request, but both submit responses to Movants' motions offering additional context and information.  The Clients oppose Movants' Section 1782 Application.[1]  For the reasons that follow, we will grant Movants' Motion to Intervene and their Section 1782 Application, and order Dechert to produce the requested discovery.

### A.    Motion to Intervene

Movants first make a Motion to Intervene in the instant Section 1782 proceeding initiated by Iraq Telecom in order to make an accompanying Section 1782 application.  Under Federal Rule of Civil Procedure 24(a)(2), a court must permit anyone to intervene as of right who (1) makes a timely motion, (2) claims an interest relating to the transaction that is at the subject of the action, (3) is so situated that disposing of the action without intervention would impair the movant's ability to protect its interest, and (4) their interest is not adequately represented by existing parties.  As an initial matter, we note that no other party objects to Movants' request to intervene in this matter.  (*See* Clients' Opposition, ECF No. 88, at 2, n.1; Iraq Telecom Response, ECF No. 82, at 8; Dechert Response, ECF No. 85, at 1.)

We also find that Movants have satisfied all the requirements of Rule 24(a)(2) in order to intervene as of right.  First, we find that Movants' Motion was timely.  To be deemed timely, a Court must consider the totality of the circumstances from three factors: (1) the stage of the proceeding, (2) prejudice that delay may cause the parties, (3) reason for the delay.  *Wallach v. Eaton Corp.*, 837 F.3d 356, 371 (3d Cir. 2016).

---

[1] The Clients are no longer represented by Dechert; they are represented by different counsel in this matter.

Here, the essential portion of the proceeding initiated by Iraq Telecom—the Section 1782 Application—has been completed, as the requested discovery has been produced to it by Dechert.  While there are still a few ancillary motions pending in the matter, the Application at the heart of this proceeding has been granted.  Therefore, there will be no delay in the current matter caused by the intervention of Movants, since Iraq Telecom has already received the discovery.  There would also be no prejudice to Dechert, as it has already identified and compiled Movants' requested discovery.  Finally, there was no significant delay in making this Motion to Intervene after we granted Iraq Telecom's initial application and its related motion to compel.  After the Court's order compelling production of the allegedly privileged documents on November 15, 2021, Movants attempted to obtain this discovery directly from Iraq Telecom in December of 2021, requesting that it send them the documents produced by Dechert.  This request was rejected in January of 2022.  Movants then attempted to obtain the discovery directly from Dechert on January 14, 2022, which it denied on January 28, 2022.  Movants then filed this Motion approximately six months later.  While conceivably the Motion could have been filed more promptly after Dechert's refusal to provide Movants with the discovery in January of 2022, six months is not a significant delay, and there is no conceivable prejudice to any party here by any delay that may have occurred.  Therefore, we find that the Motion is timely.

Next, we must consider whether Movants claim an interest relating to the transaction that is the subject of the action.  They do.  Movants' claims arise out of the same transaction that was the subject of Iraq Telecom's initial Section 1782 Application:  the alleged fraud perpetrated against Iraq Telecom through their investment in Korek.  Third, we consider whether Movants are so situated that refusing to allow intervention would impair their ability to protect their interest.  We find that it would.  Movants are key players in the fraud allegations asserted by Iraq

Telecom both in the ICC Arbitration and the contemplated UK Proceedings, and Iraq Telecom seeks to hold Movants liable, in part, for the alleged corruption. Iraq Telecom's purpose in filing the instant matter was to use the documents produced by Dechert in support of these claims. Therefore, if Movants do not have the opportunity to receive and review the same documents, their interests would be prejudiced. Finally, we find that Movants' interests are not adequately represented by existing parties. It is clear that neither Dechert nor Iraq Telecom represent Movants' interests in this proceeding, as both have declined to produce the discovery to them without court intervention. For these reasons, we grant Movants' Motion to Intervene in this matter under Rule 24(a)(2).

### B.     28 U.S.C. § 1782 Application

The purpose of 28 U.S.C. § 1782 is "to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004). Under 28 U.S.C. § 1782(a), "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation." 28 U.S.C. § 1782(a). The statute further provides that "[a] person may not be compelled to . . . produce a document or other thing in violation of any legally applicable privilege." *Id*. Section 1782 is to be interpreted liberally and the party opposing production has the burden of demonstrating that production is not proper under Section 1782. *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 190 (3d Cir. 1999).

The statutory requirements of a Section 1782 application are: (1) the person from whom discovery is sought resides in the district; (2) the request seeks the "testimony or statement" of a person or the production of a "document or thing;" (3) the discovery is for use in

5

proceedings before a foreign or international tribunal; and (4) the application is made by either a foreign or international tribunal or an interested party. 28 U.S.C. § 1782; *In re O'Keeffe*, 646 F. App'x 263, 265-66 (3d Cir. 2016).

If these requirements are met, the district court should then consider four additional factors which guide the Court's discretionary decision of whether to allow the discovery: (1) whether the entity from which discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the Section 1782 request conceals an attempt to circumvent foreign proof gathering restrictions or other policies of a foreign country or the United States; and (4) whether the subpoena contains unduly intrusive or burdensome requests. *Intel Corp.*, 542 U.S. at 264-65.

The Clients argue that Movants' Application fails to meet the requirements of Section 1782 in two significant ways. First, they argue that Movants have failed to show that the discovery is for use in a foreign tribunal. Second, they assert that the *Intel* factors weigh in favor of denying the application. We disagree and will grant the Application.

> 1. *Dechert Resides in the Eastern District of Pennsylvania, Movants Seek Production of Documents, and the Application is Made by an Interested Party*

Three of the four requirements of a Section 1782 application are not disputed in this matter: (1) the entity from which discovery is sought resides in the district; (2) the request seeks the "testimony or statement" of a person or the production of a "document or thing;" and (4) the application is made by either a foreign or international tribunal or an interested party. These requirements are clearly met here. As we have previously held in this matter, Dechert—the entity from which discovery is sought—resides in this district. *In re Ex parte Iraq Telecom Ltd.*, No. 19-175, 2021 U.S. Dist. LEXIS 215684, at *7 (E.D. Pa. Nov. 5, 2021). Further, Movants are

seeking production of documents from Dechert. Finally, the Application is made by an interested party, as Movants have "significant procedural rights" and "possess a reasonable interest in obtaining judicial assistance" in receiving the documents already produced to Iraq Telecom, which seeks to use them against Movants in its allegations of fraud. *Intel Corp.*, 542 U.S. at 256 (citing *Smit, International Litigation 1027* ("any interested person is intended to include not only litigants before foreign or international tribunals, but also . . . any other person . . . [who] merely possess a reasonable interest in obtaining the assistance").). Therefore, we find that each of these three requirements is met here.

      2.  *Discovery is For Use in Proceedings Before a Foreign Tribunal*

Movants identify two proceedings in which they will use the discovery sought from Dechert, which are the same proceedings previously identified by Iraq Telecom in its application: the pending ICC Arbitration and a contemplated proceeding in the United Kingdom. The Clients' most significant argument in opposition to this Application is that the discovery sought is not for use before a "foreign tribunal," as neither the ICC Arbitration nor the contemplated UK proceedings qualify. We disagree.

      (i)  <u>ICC Arbitration</u>

Movants assert that they intend to use the discovery sought from Dechert to defend themselves in the ongoing ICC Arbitration. While this is the same proceeding for which we granted Iraq Telecom's application in November of 2021, *In re Ex parte Iraq Telecom Ltd.*, 2021 U.S. Dist. LEXIS 215684, at *8-9 (agreeing with the Sixth Circuit, among other courts, that the ICC Arbitration was a "foreign tribunal" in the context of a Section 1782 application), the Supreme Court recently clarified that private arbitration panels—such as the ICC Arbitration—do not qualify as a "foreign tribunal" under Section 1782. *ZF Auto. US, Inc. v. Luxshare, Ltd.*,

7

142 S. Ct. 2078, 2089 (2022). As such, the Clients argue that a straightforward application of *ZF Automotive* requires that we reject the ICC Arbitration as a qualifying foreign tribunal in Movants' application. However, Movants assert that the Supreme Court's decision should not be applied retroactively here.

Generally, judicial decisions are given retroactive effect. The narrow circumstances under which judicial decisions are not applied retroactively are governed by *Chevron Oil Co. v. Huson,* 404 U.S. 97, 106-07 (1971). Under *Chevron*, a judicial decision should be applied retroactively unless: (1) the decision establishes a new principle of law that overrules clear past precedent or decides an issue of first impression that was not clearly foreshadowed; (2) retroactive operation of the new decision will retard operation of the rule in question in light of its prior history, purpose, and effect; and (3) retroactive application would create an inequitable result. *Id*.

With respect to the first requirement, we are satisfied that *ZF Automotive* established a new principle of law that overruled clear past precedent. While the Third Circuit had not yet ruled on this issue, *ZF Automotive* overruled clear past precedent of *this* Court—specifically, our holding *in this very matter* that the ICC Arbitration constituted a proceeding in a foreign tribunal. Based upon this holding, we granted Iraq Telecom's Section 1782 application and ordered Dechert to produce the requested discovery. Therefore, it is reasonable that Movants relied on the precedent set not only by this Court, but *in this very case*, that the ICC Arbitration qualified as a proceeding in a foreign tribunal in this Section 1782 application.[2]

---

[2] While the Clients argue that this is a separate Section 1782 application from Iraq Telecom's previous application, we disagree. Movants move to intervene in this case and bring essentially the exact same application for the exact same documents to be produced. Therefore, we consider this to be a continuation of Iraq Telecom's original application.

Next, we find that nonretroactive application of *ZF Automotive* would not retard operation of Section 1782.  We see no reason why retroactive application of *ZF Automotive* in this matter would be necessary to ensure future adherence to the rule.  This is a very unique situation that is unlikely to be encountered in the future:  prior to *ZF Automotive*, we granted Iraq Telecom's request for discovery from Dechert on the basis that the ICC Arbitration qualified as a proceeding in a foreign tribunal.  Iraq Telecom is actively using said documents against Movants in the ongoing ICC Arbitration, where Movants are being accused of fraud.  Movants subsequent Motion to intervene to obtain the very same discovery for use in the same Arbitration was made less than one month after the *ZF Automotive* holding that arbitrations, like the ICC Arbitration, do not qualify as proceedings in a foreign tribunal under Section 1782.  We therefore find that nonretroactive application of *ZF Automotive* in this very unique circumstance will not retard the operation of the rule in future applications.

Finally, we find substantial prejudice and great inequity would result to Movants if *ZF Automotive* were applied retroactively here.  As discussed above, the very discovery sought here has already been granted to Iraq Telecom.  Iraq Telecom is *currently* using the discovery in the ICC Arbitration, in which Movants are alleged to have perpetrated fraud.  Therefore, it would be substantially inequitable and prejudicial to Movants to deny them have the opportunity to receive the same discovery granted to Iraq Telecom in order to adequately defend themselves in the pending arbitration.

For these reasons, we decline to apply *ZF Automotive* retroactively in this case and find that, for the limited purposes of this application and consistent with our prior holding, the ICC Arbitration qualifies as a proceeding in a foreign tribunal.

(ii)     Contemplated UK Proceedings

Alternatively, we also find that the contemplated UK Proceedings qualify as a foreign tribunal.  While the Clients assert that the contemplated UK proceedings do not qualify as a proceeding in a foreign tribunal for Movants' application because these proceedings are too speculative, we disagree.   A foreign proceeding need not be pending at the time a Section 1782 application is filed, provided it is "within reasonable contemplation." *Intel*, 542 U.S. at 259.  This requires a showing of "reliable indications of the likelihood that proceedings will be instituted within a reasonable time." *Ijk Palm LLC v. Anholt Servs. USA, Inc.*, 33 F.4th 669, 677 (2d Cir. 2022) (citing *Certain Funds, Accounts &/Or Inv. Vehicles Managed By Affiliates Of Fortress Inv. Grp. L.L.C. v. KPMG, L.L.P*, 798 F.3d 113, 123 (2nd Cir. 2015)).  While there are no precise requirements, "[a]t a minimum, a [Section] 1782 applicant must present to the district court some concrete basis from which it can determine that the contemplated proceeding is more than just a twinkle in counsel's eye." *Id.*  In determining whether a contemplated proceeding is within reasonable contemplation, courts have considered whether a theory of litigation has been articulated, whether foreign counsel has been retained, and whether applicants have represented their intent to initiate further litigation upon obtaining additional information, among other factors.  *In re Hornbeam Corp.*, 722 F. App'x 7, 9-10 (2d Cir. 2018); *Sandra Holding Ltd. v. Al Saleh*, No. 18-91406, 2019 WL 3072197, at *5-6 (D. Mass. July 15, 2019); *In re Hansainvest Hanseatische Investment-GmbH*, 364 F. Supp. 3d 243, 249 (S.D.N.Y. 2018).

Iraq Telecom has repeatedly affirmed its intent to file a proceeding in the UK regarding the alleged fraud perpetrated against it.  Iraq Telecom has specifically identified a theory of litigation in the case—"to further expose and remedy alleged and evidence massive fraud and blatant corruption involving the Iraqi telecommunications system" (June 9, 2021 Letter by Iraq

10

Telecom, ECF No. 38, at 1)—has retained counsel to draft the claim for and initiate the UK Proceeding (Section 1782 Application by Iraq Telecom, ECF No. 1-1, at 26-27; Raedas Decl., ECF No. 1-6, at ¶ 2), and has conducted significant investigation into these claims both through this application for discovery and by commencing numerous other foreign proceedings, including the ICC Arbitration which is still ongoing. *See Symeou v. Hornbeam Corp. (In re Hornbeam Corp.)*, 722 F. App'x 7, 9 (2d Cir. 2018) (finding a concrete basis for a contemplated foreign proceeding where the movant had previously brought two related actions and represented that it intended to initiate further litigation once it obtained additional information). Though the bulk of this evidence was initially submitted in support of Iraq Telecom's initial Section 1782 application in 2019, Iraq Telecom explicitly confirmed in October of 2021 that it still intends to pursue the UK litigation. (Oct. 1, 2021 Letter by Iraq Telecom, ECF No. 43, at 1.) Courts have found lawsuits to be within reasonable contemplation even with much longer delays. *See, e.g.*, *Bravo Express Corp. v. Total Petrochemicals & Ref. USA, Inc.*, 613 F. App'x 319, 323 (5th Cir. 2015) (holding that a contemplated UK lawsuit was still within reasonable contemplation after a seven-year delay which was spent gathering evidence due to the fact that when an action is filed in the UK, it must be filed with all the evidence attached).

We therefore find, in light of all the circumstances, that these actions and statements of Iraq Telecom demonstrate that the contemplated UK Proceedings are within "reasonable contemplation" at this time and are "more than just a twinkle in counsel's eye."

       3.    *Intel Factors*

Once the statutory requirements of Section 1782 are met, a district court should consider several factors—known as the "*Intel* factors"—in exercising its discretion to determine whether to order the requested discovery. These factors are: (1) whether the entity from which discovery

is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the Section 1782 application conceals an attempt to circumvent foreign proof gathering restrictions or other policies of a foreign country or the United States; and (4) whether the subpoena contains unduly intrusive or burdensome requests. *Intel*, 542 U.S. at 264-65.

We initially note that Movants' application is nearly identical to that of Iraq Telecom, which we previously granted. As we previously found that the *Intel* factors weighed in favor of granting the application, we find so here as well. *See Kulzer v. Biomet Inc.*, No. 09-mc-275, 2009 U.S. Dist. LEXIS 101283, at *6 (N.D. Ind. Oct. 29, 2009) (finding the *Intel* factors weighed in favor of granting the application where "[t]his Court has already conducted a full analysis of Heraeus' discovery requests under the four discretionary Intel Corp. factors and . . . . [t]he bulk of [the second application] arguments are identical to Heraeus' arguments in support of its first application"). Nevertheless, we will briefly address the factors below.

First, Dechert is not a participant in the ICC Arbitration, nor is it an anticipated participant in the contemplated UK Proceedings. The Clients' only opposition to this factor is their argument that Dechert is being used as a "straw party" to obtain discovery which Iraq Telecom refuses to produce. However, it is of no consequence that Iraq Telecom now also possesses the discovery at issue. Dechert is not a "wrong target" of the Section 1782 application simply because Movants may be able to obtain the documents otherwise from a different entity. *See, e.g.*, *De Leon v. Clorox Co.*, No. 19-mc-80296, 2021 U.S. Dist. LEXIS 34791, at *13 (N.D. Cal. Feb. 24, 2021) ("This 'true target' argument misses the mark . . . That a party in a suit may be able otherwise to obtain the documents does not gainsay the fact that the subpoenaed party

12

possesses such documents."). Section 1782 allows discovery to proceed in accordance with the Federal Rules of Civil Procedure, which require a subpoenaed party to produce records in its "possession, custody, or control." 28 U.S.C. § 1782(a); Fed. R. Civ. P. 45(a)(1)(A)(iii). Here, Dechert has actual possession and custody of the requested discovery and is a proper target. Therefore, this factor weighs in favor of granting the application.

Second, there are two qualifying tribunals to consider here. The ICC Arbitration is receptive of the documents in the requested production, as Iraq Telecom has already presented a significant amount of them in the ongoing arbitration. In addition, we find that courts of the United Kingdom would also be receptive to this production, as has been previously found by this Court. Bunting Decl., ECF No. 1-9, at ¶¶ 11-13; *In re Société d'Etude de Réalisation et d'Exploitation Pour Le Traitement du Mais*, No. 13-mc-0266, 2013 U.S. Dist. LEXIS 167219, at *10 (E.D. Pa. Nov. 22, 2013) ("the Court is unaware of any policy observed by the French and English courts that would limit 'the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance'"). Third, we find nothing in the record to suggest that Movants are attempting to "circumvent foreign proof-gathering restrictions or other policies" by requesting the discovery here, especially considering that we have previously granted a nearly identical application based upon the same arguments. *Intel*, 542 U.S. at 265; Bunting Decl. at ¶ 15. These two factors also weigh in favor of granting the application.

Finally, the subpoena is not unduly burdensome or intrusive. There is no burden placed on Dechert to produce the discovery here, as Dechert has already identified the documents, produced a privileged log, and litigated privilege issues previously in this same matter when it produced the discovery to Iraq Telecom. Therefore, there should be nothing more to do than

simply send the discovery electronically to Movants. Accordingly, we also find that this factor weighs in favor of granting the application.

### III. CONCLUSION

For these reasons, we will grant Movants' application and order Dechert to produce the requested discovery. An appropriate Order follows.

**BY THE COURT:**

*/s/ R. Barclay Surrick*
**R. BARCLAY SURRICK, J.**