IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **IN RE: EX PARTE APPLICATION OF IRAQ TELECOM LIMITED FOR AN ORDER TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782** | **MISCELLANEOUS ACTION**<br><br>**NO. 19-mc-175** |

**MEMORANDUM OPINION**

Petitioner Iraq Telecom Limited ("Iraq Telecom") initiated this action pursuant to 28 U.S.C. § 1782 to obtain discovery for use in a foreign proceeding. The underlying billion-dollar international litigation spans more than a decade, multiple countries, and numerous parties. While important to briefly contextualize the instant dispute, the merits of the underlying litigation are not at issue—indeed, the merits of the matter have been adjudicated abroad and the arbitration award has been confirmed by this Court.[1] The only open item on the docket for the instant case is Iraq Telecom's motion for an award of fees and costs and for reconsideration of the Court's November 12, 2021 Order.

[1] The underlying dispute in this matter was adjudicated before the Arbitration Panel of the International Chamber of Commerce ("ICC"), which awarded approximately $1.6 billion in damages to Iraq Telecom in March 2023. Based on the intervention of additional persons in the domestic Section 1782 dispute, Iraq Telecom sought a domestic judgment to confirm the arbitration award. The arbitration award was subsequently confirmed by Judge Surrick in August 2024. The intervention and motion for confirmation of the arbitration award posed a procedural quirk wherein a civil action had to be opened in order for the Court to properly enter an order. That civil action is Case No. 24-cv-3728 (E.D. Pa.), which was opened specifically for the purpose of receiving and ruling upon Iraq Telecom's motion to confirm the foreign arbitration award and for this Court to rule upon that motion. Case No. 24-cv-3728 was terminated on September 20, 2024 following this Court's confirmation of the foreign arbitration award. This action, Case No. 19-mc-175, remains open and pending ruling on Iraq Telecom's outstanding Motion for an Award of Fees and Costs and for Reconsideration of the Court's November 12, 2021 Order (ECF No. 59).

In the motion under consideration here, Iraq Telecom seeks reconsideration of the Court's prior ruling that three documents out of the initial 467 contained on the privilege log at the heart of Iraq Telecom's motion to compel were indeed privileged. This Court inspected the three remaining documents and ruled they were privileged, and there has not been evidence to the contrary. More importantly, the underlying arbitration has concluded, and the arbitration award has been confirmed by this Court, so no relief would be provided to Iraq Telecom by a favorable ruling on its request for reconsideration. Iraq Telecom's motion for reconsideration is moot and shall therefore be denied.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This matter began with Iraq Telecom's *ex parte* application to take discovery from Dechert LLP ("Dechert") for use in international proceedings before the International Chamber of Commerce. That application was granted, and Iraq Telecom served corresponding Section 1782 subpoenas on Dechert. Dechert initially represented to Iraq Telecom that it would produce documents, but Pierre Gergi Boutros Youssef and Mansour Farid Succar—purported clients of Dechert—insisted that the documents be withheld to be assessed for attorney-client privilege. Dechert rendered initial productions of nonprivileged material. Youssef and Succar, despite asserting privilege over a set of the documents, refused to produce a privilege log. Iraq Telecom fronted the expense for a privilege log to be produced in the amount of $21,000.[2]

Counsel for Youssef and Succar produced a privilege log, which listed 467 documents.[3] Iraq Telecom disputed whether the documents referenced on the log were, in fact, privileged. Following attempts to meet and confer, Iraq Telecom moved to compel production of the 467 purportedly privileged documents. That motion to compel was granted, and Dechert was compelled to produce all but three of the documents contained on the privilege log. The remaining three documents— the only documents on the privilege log listing Youssef or Succar as a recipient—were retained for *in camera* review. Following Youssef and Succar's brief attempt to appeal the order on the motion to compel, Dechert produced 464 of the 467 documents listed on the privilege log. Later, the Court ordered that the remaining three documents, following *in camera* review, were indeed privileged.

---

[2] In Iraq Telecom's September 22, 2026 letter to this Court, Iraq Telecom indicated the cost of the privilege log at $31,000, not $21,000, but the number given in the motion under consideration here was $21,000. The Court will adopt Iraq Telecom's initial representation of the cost of the privilege log, $21,000.

[3] A revised privilege log, fixing several typographical errors, was produced shortly after the initial production.

Before the Court now is Iraq Telecom's November 26, 2021 motion for an award of fees and costs and for reconsideration of the Court's November 12, 2021 Order. For the following reasons, Iraq Telecom is entitled to its reasonable costs and attorneys' fees associated with the production of the privilege log, filing its motion to compel, and preparing its reply brief in support of its motion to compel.

## II. DISCUSSION

### a. Jurisdiction over Youssef and Succar

As a threshold matter, although Youssef and Succar maintain that the Court does not have personal jurisdiction over them, they are incorrect. "A party is deemed to have consented to personal jurisdiction if the party actually litigates the underlying merits or demonstrates a willingness to engage in extensive litigation in the forum." *In re Asbestos Prods. Liab. Litig. (No. VI)*, 921 F.3d 98, 105 (3d Cir. 2019). "In particular, where a party seeks affirmative relief from a court, it normally submits itself to the jurisdiction of the court with respect to the adjudication of claims arising from the same subject matter." *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 443 (3d Cir. 1999) (citing *Adam v. Saenger*, 303 U.S. 59, 67 (1938)). "Generally, a party who requests affirmative relief and rulings from a court is considered to have waived the personal jurisdiction defense." *In re Asbestos*, 921 F.3d at 106.

The record is replete with instances of Youssef and Succar actually litigating the merits of the discovery dispute. Youssef and Succar have sought relief from this Court and from the Third Circuit on multiple occasions. *See* ECF No. 28 (requesting leave to file a sur-reply in opposition to Iraq Telecom's motion to compel); ECF No. 39 (requesting that a letter by Iraq Telecom be stricken from the record); ECF No. 41 (requesting that another letter by Iraq Telecom be disregarded); ECF No. 49 (appealing this Court's November 5, 2021 Order granting in part and

denying in part Iraq Telecom's motion to compel the production of purportedly privileged documents). Youssef and Succar's litigation conduct put paid to their personal jurisdiction defenses. This Court also rejected Youssef and Succar's arguments related to personal jurisdiction in ruling on Iraq Telecom's motion to compel, noting that "it is the target of the discovery—here, Dechert—that governs for purposes of assessing personal jurisdiction under § 1782." ECF No. 50 at 5. *See also id.* (citing *In re Mare Shipping Inc.*, 2013 WL 5761104, at *3 (S.D.N.Y. Oct. 23, 2013), *aff'd sub nom. Mare Shipping Inc. v. Squire Sanders (US) LLP*, 574 F. App'x 6 (2d Cir. 2014) ("[F]or purposes of a section 1782 claim, it is sufficient that a respondent law firm resides in this district, even if the real party in interest, the client, resides elsewhere.")). Therefore, this Court may properly exercise personal jurisdiction over Youssef and Succar.

**b. Applicable Rule**

Iraq Telecom and Youssef and Succar quibble over the applicable rules under which sanctions may be levied. This action is premised on 28 U.S.C. § 1782, which permits a district court to order a person to produce documents or other things for use in a foreign or international tribunal. 28 U.S.C. § 1782(a). Unless provided otherwise, the documents or things are to be produced "in accordance with the Federal Rules of Civil Procedure." *Id.* Section 1782, on its face, does not prescribe *which* of the Federal Rules of Civil Procedure are applicable to the instant circumstances, in which Iraq Telecom successfully moved to compel production of documents by nonparties Youssef and Succar. After all, Iraq Telecom's application under Section 1782 was for discovery against Dechert, not Youssef and Succar. The first inquiry is which discovery rule applies because the appropriate sanctions will be dictated by that rule.

Iraq Telecom and Youssef and Succar's dispute whether the contours of Rule 37 or Rule 45 apply to matters involving discovery petitions under Section 1782. In several cases, courts

have applied Rule 37(a)(5)(B) in the context of a motion to compel compliance with a third-party subpoena under Rule 45. *See Miller v. Rodriguez*, 2018 WL 6416928, at *8 (D.N.J. Dec. 6, 2018) (discussing the requirements of Rule 37(a)(5) and declining to impose sanctions); *see also Baier v. Princeton Office Park, L.P.*, 2018 WL 5253288, at *5 (D.N.J. Oct. 22, 2018) (same); *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 2015 WL 10767718, at *1 (S.D.N.Y. Oct. 6, 2015) (awarding attorneys' fees to a nonparty that successfully opposed a motion to compel based on a party's failure to avoid imposing undue burden under Rule 45).

Precedent within the Third Circuit is scarce on this issue as applied to matters arising out of 28 U.S.C. § 1782.[4] Expanding the aperture, the tendency of most courts is to consider similar requests for sanctions under Rule 37. *See HRC-Hainan Holding Co., LLC v. Yihan Hu*, 2020 WL 1643786, at *2 (N.D. Cal. Apr. 2, 2020) ("[S]ection 1782 authorizes a court to issue orders under Rule 37.") (citing *In re Application of Chevron Corp.*, 709 F. Supp.2d 283, 302 (S.D.N.Y. 2010) ("[S]ection 1782(a) . . . contemplates the issuance of a subpoena or an order to produce and then, in the event of noncompliance, an application for sanctions, which may include contempt."); *see also In re The Renco Grp.*, 2023 WL 12277894, at *6 (S.D. Fla. Dec. 5, 2023) (evaluating sanctions related to a Section 1782 proceeding under Rule 37 and the court's inherent sanctioning authority); *Grptec, S.A. v. Hakim-Daccach*, 2019 WL 1385745, at *3 (S.D. Fla. Feb.

[4] Youssef and Succar refer to one of few Third Circuit cases that relate to this issue for the proposition that, because the persons ordinarily subject to or affected by § 1782 are nonparties, disputes arising under such subpoenas are commonly governed by Rule 45. *See In re ex parte Global Energy Horizons Corp.*, 647 F. App'x 83, 86-87 (3d Cir. 2016). The Third Circuit's reasoning does not address this point. Instead, the Third Circuit held that "Rule 45 counsels against loosely tailored and burdensome demands for production . . . ." *Id.* at 86. There, the demand for production was "all communications" between hundreds of employees of a company over the course of multiple years. *Id.* at 85. The request for the production of a privilege log concerning fewer than 500 documents pales in comparison to the burden of such a request. Further, *Global Energy Horizons Corp.* is a non-precedential opinion. *Heraeus Kulzer GmbH v. Esschem, Inc.*, 390 F. App'x 88, 92-93 (3d Cir. 2010) also analyzes the burden of requests within the meaning of Rule 45, but does not impose a requirement that Rule 45 guide the analysis of sanctionable conduct. And, it is also a non-precedential opinion. *In re T-Systems Scheiz AG*, 2020 WL 7384007, at *2 (S.D.N.Y. Dec. 16, 2020) comes close to imposing a requirement to analyze sanctionable conduct in similar circumstances under Rule 45, noting that when "evaluating the allocation of costs under Section 1782, the Court can look to cases considering similar issues under Fed. R. Civ. P. 45." *Id.* "Can," though, does not mean "must."

13, 2019) (evaluating sanctions related to a successful motion to compel production in a Section 1782 action); *In re Furstenberg Fin. SAS*, 2017 WL 6560357, at *2 (S.D. Fla. Oct. 31, 2017) (same).

A District Court for the District of Columbia distinguished clearly between sanctions available against parties versus nonparties. "Federal Rule of Civil Procedure 45 governs discovery requested from a non-party through a subpoena, and applies to requests for discovery issued under § 1782." *In re Chodiev*, 2020 WL 9439389, at *3 (D.D.C. Aug. 11, 2020) (citing *In re Edelman*, 295 F.3d 171, 178 (2d Cir. 2002)). However, in the underlying matter, *Edelman*, the Second Circuit described Rule 45 as "[o]ne of the[ ] procedural rules" to determine the production of documents and things under Section 1782. *Edelman*, 295 F.3d at 178. *Edelman* does not address, let alone foreclose, the applicability of Rule 37(a)(5)(A) to evaluate whether sanctions are appropriate. *See generally id.* Indeed, *Chodiev* references *Edelman* as "identifying Rule 45 as *one of the procedural rules* that governs subpoenas issued under § 1782." *Chodiev*, 2020 WL 9439389, at *3 (emphasis added). It is conceivable that, while Rule 45 requires parties to "avoid imposing undue burden or expense on a person subject to the subpoena," Fed. R. Civ. P. 45(d)(1), Rule 37(a)(5)(A) may nonetheless be utilized to evaluate the propriety of sanctions for nonparties who have been found noncompliant with discovery requests.[5] As a result, the availability of sanctions will be evaluated under Rule 37(a)(5)(A).

---

[5] Contrast the structure of Rule 37(a), requiring "notice to other parties and all affected persons" for a party to move for an order compelling discovery, with that of Rule 37(b), describing sanctions available against "a party or a party's officer, director, or managing agent—or a witness designated under Rule 30(b)(6) or 31(a)(4)—[who] fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(a)(1); 37(b)(2)(A); *see also Gen. Ins. Co. of Am. v. E. Consol. Utils., Inc.*, 126 F.3d 215, 220 (3d Cir. 1997) ("On its face, however, Rule 37(b)(2) applies only to parties, and we have found no case that has applied Rule 37(b)(2) to a nonparty."). Youssef and Succar assert that courts have rejected attempts to extend the obligations imposed by Rule 37 onto nonparties or entities involved in disputes relating to Section 1782, but cite only cases from the District Court for the District of Columbia, and no Third Circuit authority, in support of their contention.

**c. Availability of Sanctions**

**i. Sanctions Against Youssef and Succar Under Rule 37**

If a party successfully moves to compel discovery, the party against whom the motion is granted is required to pay the movant's reasonable expenses incurred in making the motion, including attorneys' fees. Fed. R. Civ. P. 37(a)(5)(A). However, such payment must not be ordered if: "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." *Id.* District courts have "broad discretion" in fashioning appropriate sanctions under Rule 37. *Wachtel v. Health Net, Inc.*, 239 F.R.D. 81, 84 (D.N.J. 2006); *see also McLaughlin v. Phelan Hallinan & Schmieg, LLP*, 756 F.3d 240, 248 (3d Cir. 2014) (reviewing an order imposing sanctions for abuse of discretion). Such sanctions must be "just." *Estate of Spear v. Comm'r of Internal Revenue Serv.*, 41 F.3d 103, 111 (3d Cir. 1994).

Iraq Telecom largely prevailed on its motion to compel production of the purportedly privileged documents, so the inquiry becomes whether an exception to the payment requirement imposed by Rule 37(a)(5)(A) applies. First, there is no dispute that Iraq Telecom first attempted in good faith to obtain the privileged documents via meet and confer prior to filing its motion to compel. The first exception under Rule 37(a)(5)(A)(i) does not apply.

Second, Youssef and Succar were not substantially justified in withholding documents that were not privileged on their face. Substantial justification requires justification "to a degree that could satisfy a reasonable person." *Bosire v. Passaic Cnty.*, 2017 WL 4532157, at *2 (D.N.J. Oct. 10, 2017) (citing *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). Substantial justification is satisfied if there is a "genuine dispute, or if reasonable people could differ as to [the

appropriateness of the contested action].” *Pierce*, 487 U.S. at 565 (alteration in original, citations omitted). As Judge Surrick ruled on the motion to compel, the sought after “467 documents in the privilege log consist mainly of emails between Dechert attorneys and other individuals involved in the real estate closings of the UK Properties.” ECF No. 50 at 10. Youssef and Succar were direct recipients of only three of the 467 documents in the privilege log—the documents that were ultimately found to have been privileged. At no point in their briefing on the motion to compel did Youssef and Succar address how the presence of third parties copied on 464 of the documents did not destroy the privilege. They skirt the issue once again now. “Attorney-client privilege will not ordinarily attach to communications made in the presence of a third party, and disclosing privileged communications to a third party waives the privilege.” *Sandoz Inc. v. Lannett Co., Inc.*, 570 F. Supp.3d 258, 265 (E.D. Pa. 2021). Under these circumstances, the absence of a client on purported attorney-client communications is fatal to the assertion of privilege. *See Idenix Pharms., Inc. v. Gilead Scis., Inc.*, 195 F. Supp.3d 639, 642 (D. Del. 2016) (“The attorney-client privilege protects communications between a client and an attorney related to the purpose of securing legal advice.”) (citing *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 862 (3d Cir. 1994); *see also id.* (“The privilege applies to communications from an attorney to a client as well as from a client to its attorney.”) (citing *Upjohn v. United States*, 449 U.S. 383, 390 (1981)). A party asserting privilege must show, among other things, that the asserted holder of the privilege is or is sought to become a client. *In re Grand Jury Invest.*, 599 F.2d 1224, 1233 (3d Cir. 1979). The second exception under Rule 37(a)(5)(A)(ii) does not apply.

Third, there are no other circumstances that render an award of expenses unjust. Iraq Telecom fronted the expenses associated with the preparation of a privilege log that ultimately

described baldly nonprivileged documents. The fact that Iraq Telecom filed a motion to compel the production of the nonprivileged documents was necessary to challenge what it suspected to be, and what turned out to be, improper privilege designations. The third exception under Rule 37(a)(5)(A)(iii) does not apply. Iraq Telecom, therefore, is entitled to its reasonable expenses.

**d. Sanctions Against Counsel Under 28 U.S.C. § 1927**

Iraq Telecom also argues that sanctions are appropriate under 28 U.S.C. § 1927. Section 1927 provides that "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Importantly, Section 1927 provides for the assessment of sanctions directly against counsel. *Campana v. Muir*, 615 F. Supp. 871 (M.D. Pa. 1985); *see also La Salle Nat. Bank v. First Conn. Holding Grp., L.L.C. XXIII*, 111 F. Supp.2d 507, 511 (D.N.J. 2000) (citing *Williams v. Giant Eagle Mkts., Inc.*, 883 F.2d 1184, 1190 (3d Cir. 1989)) ("Sanctions imposed under § 1927 are directed at the attorney, and should not be imposed upon the client."). To support a court's imposition of sanctions, Section 1927 requires a court to find that *an attorney* has (1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the cost of the proceedings; (4) in bad faith or by intentional misconduct. *In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 101 (3d Cir. 2008) (emphasis added).

Iraq Telecom's argument that sanctions under Section 1927 are appropriate fails for several reasons. First, Iraq Telecom failed to raise any meaningful argument for sanctions under Section 1927 in its opening brief, reserving argument instead for its reply. But, new arguments may not be raised for the first time in a reply. *See Lara v. Comm'r Pa. State Police*, 125 F.4th

428, 432 n.5 (3d Cir. 2025), *cert. denied sub nom. Bivens v. Second Amend. Found.*, 146 S. Ct. 2812 (2026) ("An issue is [forfeited] unless a party raises it in its opening brief[.]"); *see also Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994) ("[A] passing reference to an issue . . . will not suffice to bring that issue before this court."). Iraq Telecom makes only a passing reference to the potential applicability of sanctions on counsel in a footnote in its opening brief, thereby forfeiting the argument.[6] Second, Iraq Telecom fails to describe any conduct *by counsel* warranting sanctions under Section 1927, noting even that its "Motion makes clear that the responsible *principals* . . . should be held to account." (emphasis added). Thus, sanctions will not be imposed on Youssef and Succar's attorneys under Section 1927.

## III. CONCLUSION

For the foregoing reasons, Iraq Telecom's motion for fees and costs will be granted, and Iraq Telecom is entitled to recover the $21,000 that it paid counsel for Youssef and Succar to cover the costs to produce the privilege log, as well as any reasonable attorneys' fees associated with preparing its November 24, 2020 motion to compel and January 12, 2021 reply in support thereof. Because Iraq Telecom has not provided sufficient information for the Court to determine the amount of reasonable attorneys' fees to which it may be entitled, Iraq Telecom will be directed to submit an itemization of the attorneys' fees it seeks to recover in connection with the preparation of its motion to compel and corresponding reply brief, as well as any supplemental documentation to support its itemization. The Court will determine the amount of any fee award after reviewing that submission and any response thereto.

---

[6] While many prior opinions have referred to this concept as "waiver," the Third Circuit recently clarified that the more precise term is "forfeiture." *See DLJ Mortg. Cap., Inc. v. Stevens*, 167 F.4th 632, 635 (3d Cir. 2026) ("Under our precedents, when a litigant raises an argument 'in passing (such as, in a footnote)' but fails to 'squarely argue[ ]' it, we consider it a forfeiture, not a waiver." (quoting *Kalu v. Spaulding*, 113 F.4th 311, 344 n.21 (3d Cir. 2024)).

An appropriate order follows.

**BY THE COURT:**

**S/ WENDY BEETLESTONE**

**WENDY BEETLESTONE, C.J.**