**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE:<br><br>EX PARTE APPLICATION OF IRAQ TELECOM LIMITED FOR AN ORDER TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. §1782 | MISCELLANEOUS ACTION<br><br>Case No. 19-175 |

**IRAQ TELECOM LIMITED'S SUPPLEMENTAL BRIEF REGARDING**
**THE AMOUNT OF REASONABLE ATTORNEYS' FEES**

# TABLE OF CONTENTS

**Page**


PRELIMINARY STATEMENT ..... 1

PROCEDURAL HISTORY ..... 2

LEGAL STANDARD ..... 4

ARGUMENT ..... 4

I. IRAQ TELECOM SEEKS FEES COVERED BY THE ORDER ..... 5

II. THE FEES REQUESTED ARE REASONABLE. ..... 6

A. The Number of Hours Worked Was Reasonable. ..... 6

1. The Motion to Compel Was Not a Routine Discovery Motion. ..... 6

2. The Clients' Opposition Challenged the Underlying Section 1782 Application, Requiring the Reply to Relitigate an Issue on Which Iraq Telecom Had Already Prevailed: The Merits of the Application. ..... 7

B. The Hourly Rates Are Reasonable. ..... 8

1. Quinn Emanuel's Rates Are Reasonable. ..... 9

(a) The Discounted Fees Are Reasonable Compared to Market Standards. ..... 9

(b) Courts Have Repeatedly Approved Quinn Emanuel's Rates. ..... 11

(c) The CLS Fee Schedule Is Not the Proper Measure of Reasonable Fees. ..... 12

2. The Other Firms' Fees Were Reasonable. ..... 14

(a) Skarzynski Marick ..... 14

(b) Gibson Dunn ..... 15

(c) Raedas ..... 16

CONCLUSION ..... 17

# TABLE OF AUTHORITIES

**Page**

## Cases

*AMF Bowling Centers, Inc. v. Tanase*,
2025 WL 1132327 (E.D. Va. Apr. 16, 2025), *aff'd*, 2025 WL 2231843 (4th Cir. Aug. 1, 2025) ....................11

*BCS Int'l, Inc. v. Heiting*,
2011 WL 13216979 (E.D. Wis. Mar. 24, 2011) ....................6

*Blattman v. Siebel*,
2021 WL 7411946 (D. Del. Aug. 10, 2021), *report and recommendation adopted as modified*, 2021 WL 7209226 (D. Del. Dec. 6, 2021) ....................11

*City of Riverside v. Rivera*,
477 U.S. 561 (1986)....................8

*Commodity Futures Trading Commission v. Traders Global Group Inc.*,
2025 WL 1930172 (D.N.J. July 14, 2025)....................12

*Damian J. v. Sch. Dist. of Philadelphia*,
2008 WL 1815302 (E.D. Pa. Apr. 22, 2008), *aff'd,* 358 F. App'x 333 (3d Cir. 2009) ....................13

*Enterasys Networks, Inc. v. DNPG, LLC*,
2006 WL 1644598 (D.N.H. June 12, 2006)....................6

*Frompovicz v. Niagara Bottling, LLC*,
2021 WL 601100 (E.D. Pa. Feb. 16, 2021) ....................4

*G. Geerlings Exp. B.V. v. Van Hoekelen Greenhouses, Inc.*,
2017 WL 2692001 (M.D. Pa. June 21, 2017)....................9

*Kollman v. Hewitt Assocs., LLC*,
2005 WL 3542578 (E.D. Pa. Dec. 20, 2005)....................8

*LeJeune v. Khepera Charter Sch.*,
420 F. Supp. 3d 331 (E.D. Pa. 2019) ....................11–12

*Liqwd, Inc. v. L'Oreal USA, Inc.*,
2019 WL 6840353 (D. Del. Dec. 16, 2019)....................12

*Maldonado v. Houstoun*,
256 F.3d 181 (3d Cir. 2001)....................4

*McCready v. Re/Max Achievers*,
2026 WL 1847251 (E.D. Pa. June 25, 2026) ........ 4, 9–13

*Minehan v. McDowell*,
2023 WL 199276 (E.D. Pa. Jan. 17, 2023) ........ 10

*Mirra v. Jordan*,
2016 WL 1659894 (S.D.N.Y. Apr. 8, 2016) ........ 12

*PPG Industries, Inc. v. Jiangsu Tai Mao Glass Co.*,
2022 WL 22288281 (W.D. Pa. Nov. 14, 2022) ........ 11

*Proofpoint, Inc. v. Vade Secure, Inc.*,
2020 WL 7398791 (N.D. Cal. Dec. 17, 2020) ........ 12

*Romain v. Sonnier*,
2019 WL 5810311 (E.D. La. Nov. 7, 2019) ........ 12

*Williams v. State Farm Fire & Cas. Co.*,
2019 WL 6036808 (W.D. Mich. Nov. 14, 2019) ........ 6

**Rules/Statutes**

Federal Rule of Civil Procedure 37(a)(5)(A) ........ 6

Pursuant to this Court's order on October 9, 2026 (ECF No. 144) (the "**Order**"), Applicant Iraq Telecom Limited ("**Iraq Telecom**") respectfully submits this supplemental brief regarding the amount of reasonable attorneys' fees it seeks in connection with the preparation of its November 24, 2020, Motion to Compel (ECF No. 20) ("**Motion to Compel**" or "**Motion**"), and its January 12, 2021, reply in support of the same (ECF No. 27) ("**Reply**," and together with the Motion to Compel, the "**Briefing**").

## PRELIMINARY STATEMENT

This Court has already held that Iraq Telecom is entitled to its reasonable attorneys' fees for the Motion to Compel and the Reply. (ECF No. 144 ¶ 1.) The only question now is the amount. The answer is the fees Iraq Telecom seeks: $474,829.04 for 656.90 hours of work, much of which was billed at discounted rates, and all of which is limited to work the Order covers.

The fee reflects the complexity of the dispute. Pierre Gergi Boutros Youssef and Mansour Farid Succar (together, the "**Clients**") withheld 467 documents on the purported basis of privilege under U.S. and English law, as listed on their privilege log (the "**Log**"). To challenge those claims, Iraq Telecom had to review every entry on the Log, map every third party on it, and show that each of the nearly 500 claims failed under both U.S. and English law. Iraq Telecom also had to redouble its already successful defense of its Section 1782 application that the Court had granted a year earlier (the "**Application**"), since the Clients' opposition to the Motion to Compel (ECF No. 24) (the "**Opposition**") presented a belated backdoor challenge to the Application on the merits. The Opposition also advanced a novel (and ultimately unavailing) English-law privilege theory, which required Iraq Telecom to engage in extensive additional research and analysis before defeating it out of hand.

Iraq Telecom's efforts succeeded: the Court ordered that all but three documents be produced. The documents revealed key evidence of an alleged international bribery scheme, which

became the central evidence in Iraq Telecom prevailing in an international arbitration resulting in a more than $1 billion award in damages for the theft of its investment in a telecommunications company in Iraq. The Clients, who by all accounts were working at the behest of the perpetrators of the investment theft, broadened the dispute over the Motion to Compel, now in obvious furtherance of withholding hundreds of critical documents. The Clients chose that fight; the Court has awarded fees; and the Clients must now compensate Iraq Telecom for the monies owed.

To the extent that the Clients endeavor to take issue with the hours involved in this matter, their gripes are without merit. Indeed, to the contrary, Iraq Telecom has exercised billing judgment throughout. It claims only the time recorded between the day the Clients produced their Log, October 20, 2020, and the day Iraq Telecom filed its Reply, January 12, 2021. It seeks only the discounted fees it was actually charged, and nothing for this submission. The rates it seeks fall within the range reported by third-party market data. The Court should award them in full.

## PROCEDURAL HISTORY

Iraq Telecom filed the Application on November 5, 2019 (ECF No. 1), and the Court granted it on December 5, 2019 (ECF No. 11). The Application sought discovery for use in a pending arbitration administered by the International Chamber of Commerce, including its successor proceeding (together, the "**Arbitration**"),[1] in which Iraq Telecom alleged a massive fraud and corruption scheme involving the Iraqi telecommunications system. Iraq Telecom then served Dechert LLP ("**Dechert**") with a subpoena for documents. On February 14, 2020, the day Dechert had committed to produce, the Clients—Dechert's ostensible former clients—surfaced through separate counsel and caused Dechert to hold its production pending their own privilege

[1] The Arbitration includes both an original ICC arbitration and a second ICC arbitration, as explained in paragraph five of the Declaration of Lindsey D. Schmidt filed alongside this brief and ECF No. 27-2 ¶¶ 10–11, 15–17.

review. (ECF No. 20-2 ¶¶ 5–6.) The Clients then refused to provide a privilege log, and, rather than burden the Court with a dispute over its production, Iraq Telecom ultimately agreed to pay for a portion of its preparation. (*Id.* ¶ 12.)

On October 20, 2020, the Clients produced a log withholding 467 documents, followed by a revised log (that fixed minor typographical errors) on November 12, 2020. (*Id.* ¶ 14.) The parties exchanged correspondence about the Log's deficiencies from October 27 to November 4, 2020, but they reached an impasse. (*Id.* ¶¶ 15–17.) On November 24, 2020, Iraq Telecom filed its Motion to Compel production of documents that were wrongly marked as privileged. (ECF No. 20.) On December 15, 2020, Dechert filed a response taking no position on the privilege questions, and the Clients filed their Opposition. (ECF Nos. 23, 24.) Iraq Telecom filed its Reply on January 12, 2021. (ECF No. 27.) The Clients then sought leave to file a surreply, which Iraq Telecom opposed and the Court denied. (ECF Nos. 28, 29, 57.)

On November 5, 2021, the Court granted Iraq Telecom's Motion to Compel production as to nearly all of the 467 challenged documents; it decided to review three remaining ones *in camera*. (ECF Nos. 50, 51.) The Clients sought an extension of the production deadline, which Iraq Telecom opposed. The Clients then moved the Third Circuit for an emergency stay, which that court denied on November 10, 2021. *In re Ex Parte Application of Iraq Telecom Ltd.*, No. 21-3070, Doc. 9 (3d Cir. Nov. 10, 2021). On November 12, 2021, the Court held that the three remaining documents were privileged. (ECF No. 56.) Dechert produced the 464 non-privileged documents, which revealed the essential evidence for the Arbitration and the resulting award well exceeding one billion dollars.

Iraq Telecom moved for its fees and costs on November 26, 2021. (ECF No. 59.) On October 9, 2026, the Court granted the motion in relevant part, ordering the Clients to pay Iraq

Telecom $21,000 in costs for the preparation of the Log, together with its reasonable attorneys' fees incurred in connection with the preparation of the Motion to Compel and the Reply. (ECF No. 144 ¶ 1.) The Court directed Iraq Telecom to submit this supplemental brief, including an itemization of the fees sought. (*Id.* ¶ 2.)

## <u>LEGAL STANDARD</u>

"To determine a reasonable fee award, courts multiply 'the number of hours reasonably expended by a reasonable hourly rate,' commonly referred to as the 'lodestar.'" *McCready v. Re/Max Achievers*, 2026 WL 1847251, at *6 (E.D. Pa. June 25, 2026) (citing *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001)). As for determining whether the number of hours expended was reasonable, courts "review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are excessive, redundant, or otherwise unnecessary." *Maldonado*, 256 F.3d at 184 (citation omitted). As for determining whether the hourly rate charged was reasonable, "[t]he starting point … is the attorneys' hourly billing rate." *Frompovicz v. Niagara Bottling, LLC*, 2021 WL 601100, at *3 (E.D. Pa. Feb. 16, 2021) (Beetlestone, J.). From there, courts generally "assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Maldonado*, 256 F.3d at 184 (citation omitted).

## <u>ARGUMENT</u>

Iraq Telecom seeks a total of $474,829.04 in fees for 656.90 hours of work. This includes work by Iraq Telecom's counsel Quinn Emanuel Urquhart & Sullivan, LLP ("**Quinn Emanuel**"), Skarzynski Marick & Black LLP ("**Skarzynski Marick**"), and Gibson, Dunn & Crutcher LLP ("**Gibson Dunn**"), and its investigative firm, Raedas Consulting Limited ("**Raedas**"). As outlined below, these fees are only for work directly covered by the Order: the preparation of the Motion

to Compel (including reviewing the Log and conferring with opposing counsel who was stringently resisting any production), the Reply, and the supporting declarations for each. The number of hours billed was reasonable; both briefs required extensive work due to the length of the Log, the complex legal issues involved, and the Clients' serial attempts to relitigate the Application in their Opposition. The hourly rates each firm charged are also reasonable given the complex and high-stakes issues in this case and third-party measures of fees charged by comparable firms. The Court should award Iraq Telecom its requested fees in full.

## I. IRAQ TELECOM SEEKS FEES COVERED BY THE ORDER.

Every hour for which Iraq Telecom seeks compensation falls within the Order, which awarded Iraq Telecom its "reasonable attorneys' fees incurred in connection with the preparation of" the Motion to Compel and the Reply. (ECF No. 144 ¶ 1.) Iraq Telecom claims only time recorded between October 20, 2020, when the Clients produced the Log, and January 12, 2021, when Iraq Telecom filed its Reply. *See* Declaration of Kristin N. Tahler ("**Tahler Dec.**") ¶¶ 5–13 & Ex. 1. Iraq Telecom also seeks compensation for the time that its counsel Lindsey D. Schmidt and her team at Gibson Dunn spent preparing a declaration in support of the Reply (ECF No. 27-2). Gibson Dunn's fees are recoverable because Ms. Schmidt was Iraq Telecom's counsel in the Arbitration, and her declaration was required to respond to the Clients' arguments.

Finally, Iraq Telecom seeks compensation for the time Raedas spent on the declaration of its director, Nicholas Bortman, an expert in global disputes, asset tracing, and enforcement of judgments and arbitral awards. (ECF No. 20-6.) The declaration was necessary to rebut the Clients' assertions that third parties on the withheld documents were the Clients' "designated agents" or participated in privileged communications. Bortman supplied the factual foundation from Raedas's investigation and Dechert's production: he identified the ZR Group personnel and others on the withheld documents (*id.* ¶¶ 13, 18–22, 36–41, 47–48), explained that the Clients

appear on none of the produced emails and that Dechert's contacts ran through Mr. Rahmeh's associates (*id.* ¶¶ 13–14, 33–34), and described the relationships showing why those individuals were not the Clients' agents. Raedas's fees are recoverable because awards under Federal Rule of Civil Procedure 37(a)(5)(A) may include fees paid to experts. *See, e.g.*, *Enterasys Networks, Inc. v. DNPG, LLC*, 2006 WL 1644598, at *2 (D.N.H. June 12, 2006) (holding that the fee-shifting language of what is now Rule 37(a)(5)(A) is "sufficiently broad to include fees incurred by a party who reasonably consults an expert in connection with a motion to compel"); *BCS Int'l, Inc. v. Heiting*, 2011 WL 13216979, at *6–7 (E.D. Wis. Mar. 24, 2011) (holding that plaintiffs were entitled to their reasonable expenses under the rule, and declining to find their forensic expert's fees unreasonable); *Williams v. State Farm Fire & Cas. Co.*, 2019 WL 6036808, at *7 (W.D. Mich. Nov. 14, 2019) (awarding costs of a forensic analyst under the rule).

## II. THE FEES REQUESTED ARE REASONABLE.

### A. The Number of Hours Worked Was Reasonable.

#### 1. The Motion to Compel Was Not a Routine Discovery Motion.

Iraq Telecom seeks compensation for 336.25 hours spent on the Motion, which necessarily was a 41-page memorandum supported by three declarations and 40 exhibits. (ECF No. 20-1; ECF Nos. 20-2, 20-6, 20-35.) Although the number of hours spent and the work product generated were substantial, they were reasonable and necessary for the following reasons.

*First*, the volume of material to review was substantial. The Log identified 467 withheld documents, and the Court agreed that all but three were not privileged. (ECF No. 50 at 11.) Achieving that result required Iraq Telecom to work through every entry, group the entries, and tie its arguments to specific documents that had already been produced. Tahler Dec. ¶¶ 7–9. It also had to map the roles and relationships of the many third parties who populated the Log, even though the Clients themselves appeared on only three entries. *Id.* ¶¶ 7, 8(b); Declaration of

Nicholas Bortman ("**Bortman Dec.**") ¶ 5. Iraq Telecom had to supply background on these third parties and relationships through its investigator, Raedas. *Id.*; *see also* ECF No. 20-6. The Motion thus required mastering a large body of people, documents, and facts.

*Second*, the Motion required analysis under both U.S. and English law. Because the Clients asserted privilege under English law over communications concerning London property transactions, Iraq Telecom had to show that those claims failed under either body of law, supported by a declaration from an English solicitor, Matthew Bunting. (ECF No. 20-35.) The Motion also had to address whether the two bodies of law conflict; whether privilege could extend to the non-client agents and third parties who populated the Log, and whether copying them waived any privilege; whether the logged communications concerned legal or business advice; whether non-privileged documents became privileged when forwarded to counsel; and whether the crime-fraud exception applied, with an alternative request for *in camera* review. (ECF No. 20-1 at 15–35.)

### 2. The Clients' Opposition Challenged the Underlying Section 1782 Application, Requiring the Reply to Relitigate an Issue on Which Iraq Telecom Had Already Prevailed: The Merits of the Application.

Iraq Telecom seeks compensation for 293.10 hours spent on the Reply, which was a 30-page memorandum supported by three new declarations and nine exhibits. (ECF No. 27.) Because the Motion had shown that the Log improperly withheld nearly all of its documents as privileged, the Clients pivoted in their Opposition to two new fronts: a belated attack on the Application the Court granted a year earlier, and an argument that only English law applied. (ECF No. 24 at 11–25.) Iraq Telecom necessarily answered both of these arguments in the Reply. To do so, Iraq Telecom prepared three new declarations: (i) a second Tahler declaration, explaining the extent of the meet-and-confer process and that although the Clients referenced English law in that process, they relied only on U.S. law during substantive privilege discussions; (ii) a Schmidt declaration,

addressing the Clients' claims about the status of the Arbitration; and (iii) a second English-law Bunting declaration with nine exhibits. (ECF Nos. 27-1, 27-2, 27-3.)

The Clients, who required this work with their transparent effort to conceal their privilege misdeeds with inapt and long-resolved issues and arguments, cannot now complain about the time spent on the Reply. After all, a party "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the [opposing party] in response." *City of Riverside v. Rivera*, 477 U.S. 561, 580 n.11 (1986) (plurality); *Kollman v. Hewitt Assocs., LLC*, 2005 WL 3542578, at *3 n.3 (E.D. Pa. Dec. 20, 2005) ("Defendant aggressively defended the case, which is its privilege, but in doing so, cannot justly complain about Plaintiff's counsel spending too much time."). The number of hours worked was reasonable and was necessary only because of the Clients' own broadening of the issues in dispute in a desperate attempt to keep the damaging documents from Iraq Telecom.

**B. The Hourly Rates Are Reasonable.**

Four billers contributed to the work for which Iraq Telecom seeks compensation: Quinn Emanuel (lead counsel), Skarzynski Marick (Pennsylvania co-counsel), Gibson Dunn (Arbitration counsel), and Raedas (investigator). The rates of each are reasonable. Quinn Emanuel billed 538.30 hours at discounted rates that fall within third-party market benchmarks and that other courts have approved. Skarzynski Marick billed 81.60 hours, Gibson Dunn 10.70, and Raedas 26.30, each at rates Iraq Telecom agreed to pay and that are comparable to the market.

| Table A: Summary of Fees Sought | | |
|---|---|---|
| **Firm** | **Hours Billed** | **Fees Sought** |
| Quinn Emanuel | 538.30 | $413,207.81 |
| Skarzynski Marick | 81.60 | $38,760.00 |
| Gibson Dunn | 10.70 | $10,527.50 |
| Raedas | 26.30 | $12,333.73[2] |
| Total | 656.90 | $474,829.04 |

### 1. Quinn Emanuel's Rates Are Reasonable.

(a) The Discounted Fees Are Reasonable Compared to Market Standards.

The "starting point" for reasonableness is the rates Quinn Emanuel actually charged in this matter. *See McCready*, 2026 WL 1847251, at *6. These rates inform reasonableness because Iraq Telecom agreed to pay them. Iraq Telecom was a sophisticated corporate client—one with every incentive to control its legal spend—and it agreed to pay Quinn Emanuel's rates because this was a matter of considerable complexity and high stakes. This is inherently evidence of reasonableness.

[2] The total fees sought for work performed by Raedas include a 5% discretionary discount that Raedas applied to its fees. Bortman Dec. ¶ 9. The total has also been converted to dollars from pounds, because Raedas billed, and Iraq Telecom's shareholder Agility Public Warehousing Company K.S.C.P. ("**Agility**") paid, £9,238.75. *See G. Geerlings Exp. B.V. v. Van Hoekelen Greenhouses, Inc.*, 2017 WL 2692001, at *5 (M.D. Pa. June 21, 2017) (noting that the "norm" is that foreign currency amounts should be converted to U.S. dollars unless the creditor requests otherwise). That sum was equivalent to $12,333.73 on November 24, 2020 (the day of the final Raedas time entry) and $12,221.94 on October 9, 2026 (the day of the Order). *Compare* Federal Reserve, *Foreign Exchange Rates—H.10* (Nov. 30, 2020), https://www.federalreserve.gov/releases/h10/20201130/ (reporting a rate of $1.3350 per pound on November 24, 2020), *with* Federal Reserve, *Foreign Exchange Rates—H.10* (Oct. 13, 2026), https://www.federalreserve.gov/releases/h10/20261013/ (reporting a rate of $1.3229 per pound on October 9, 2026). The earlier, and slightly higher, figure is proper because the pound depreciated against the dollar by just over a cent between November 2020 and October 2026. *See G. Geerlings Exp. B.V.*, 2017 WL 2692001, at *5–6 (applying the test from the Restatement (Third) of Foreign Relations Law, which instructs that if the currency has depreciated, the proper exchange rate date is the date of "injury or breach").

Iraq Telecom seeks compensation only for fees charged *after* substantial discounts Quinn Emanuel applied to every invoice for the Briefing: 15% for work performed in October and November 2020, 20% for December 2020, and 10% for January 2021. Tahler Dec., Ex. 1 at 2, 4, 5, 13, 20. Those discounts reduced the fees for the Briefing by $77,459.69, from $490,667.50 to the $413,207.81 that Iraq Telecom now seeks. Tahler Dec. ¶ 30. Quinn Emanuel's standard hourly rates for each timekeeper, along with the hours claimed, the discounted fees, and the resulting effective discounted hourly rate for each, are listed in the Tahler Declaration. *Id.* ¶ 29. As the Tahler Declaration shows, Quinn Emanuel's effective hourly rates, after discounts, ranged from $964.21 to $977.86 for partners, $803.90 for counsel, and $659.83 to $930.22 for associates. *Id.* ¶¶ 29–31 & Ex. 1.

Those rates fall comfortably within third-party benchmarks, which courts in this Circuit rely on. *See McCready*, 2026 WL 1847251, at *7 (finding the Real Rate Report to be "a good starting point given the indicia of reliability in third-party surveys like [it]") (citation omitted); *Minehan v. McDowell*, 2023 WL 199276, at *4 (E.D. Pa. Jan. 17, 2023) (recognizing that the Real Rate Report is "generally regarded as the legal industry's leading benchmark for law firm rates and staffing trends based on actual invoice data") (citation omitted).[3] The following table represents the reported fees in the Real Rate Report compared to the fees charged by partners and associates in this matter, as discounted.[4] As the table shows, Quinn Emanuel's fees as charged in this case are comfortably within the range of fees reported in the Real Rate Report:[5]

[3] The Real Rate Report that the court relied on in *McCready* is attached as Exhibit A. The relevant rates are located at page 55.

[4] *See* Tahler Dec. ¶ 32.

[5] The Real Rate Report does not account for recent large increases in fees among large law firms. In recent years, large law firm rates have continued to climb—in some cases, large-firm associates bill as much as $2,000 per hour. *See* Jon Campinski, *Big Law Partner, Associate Billing Rates Continue to Climb: Report*, Law.com (Apr. 22, 2025),

| Table B: Real Rate Report Comparison | | |
|---|---|---|
| **Category** | **Real Rate Report Range (First to Third Quartile)** | **Quinn Emanuel Blended Discounted Rate** |
| Partners | $850–$1,350 | $975 |
| Associates and Counsel | $550–$882 | $772 |

Courts in this District have found similar rates reasonable, even in simpler cases. In *McCready*, for example, Judge Murphy relied in part on the Real Rate Report to find reasonable rates of $1,285.35 for a senior partner, $913.50 for counsel, $772.76 for a ten-year partner, and $628.10 for third-year associates. 2026 WL 1847251, at *8. Unlike this case, *McCready* was an "important and interesting, but not complex" dispute involving negligence, unfair trade, and Fair Housing Act claims. *Id.* at *1, *8 (citation omitted). This case, by contrast, was a complex transnational discovery dispute that turned on hard-fought questions of U.S. and English privilege law. If similar, albeit mostly slightly lower, rates were appropriate in *McCready*, Quinn Emanuel's discounted rates here are reasonable as well.

(b) Courts Have Repeatedly Approved Quinn Emanuel's Rates.

Courts in this Circuit (and across the country[6]) have also found Quinn Emanuel's fees reasonable in other cases. In *PPG Industries, Inc. v. Jiangsu Tai Mao Glass Co.*, the court found

https://www.law.com/americanlawyer/2025/04/22/big-law-partner-associate-billing-rates-continue-to-climb-report-/ (last visited Nov. 9, 2026); Lamarre & Maloney, *Senior Partners Approach $3,000 an Hour, As More Billing Rate Hikes Expected in 2025*, Law.com (Sept. 24, 2024), https://www.law.com/americanlawyer/2024/09/24/senior-partners-approach-3000-an-hour-as-more-billing-rate-hikes-expected-in-2025/ (last visited Nov. 9, 2026). Because a rate's reasonableness is measured against the current market, *LeJeune v. Khepera Charter Sch.*, 420 F. Supp. 3d 331, 340–41 (E.D. Pa. 2019), Quinn Emanuel's 2020 and 2021 rates are well below current rates among peer law firms.

[6] In 2025, for example, the court in *AMF Bowling Centers, Inc. v. Tanase* considered "[r]ates for Quinn Emanuel counsel [that] range from $990 for [junior] associates to $2,180 for partners," held them to be reasonable, and awarded fees on that basis. 2025 WL 1132327, at *7–9 (E.D. Va. Apr. 16, 2025), *aff'd*, 2025 WL 2231843 (4th Cir. Aug. 1, 2025). *See also Blattman v. Siebel*, 2021 WL 7411946, at *3 (D. Del. Aug. 10, 2021), *report and recommendation adopted as modified*,

Quinn Emanuel's fees reasonable, in part because the case involved a complex "global scheme," requiring "counsel with a global footprint." 2022 WL 22288281, at *4 (W.D. Pa. Nov. 14, 2022) (awarding $2.1 million in attorneys' fees). So too in *Commodity Futures Trading Commission v. Traders Global Group Inc.*, where the court approved Quinn Emanuel fees of up to $1,810 for a partner and $1,465 for an associate because of the "complexity of the matter, the issues involved in the Motion," and the seriousness of defendants' exposure, which required "retention of highly experienced counsel." 2025 WL 1930172, at *2 (D.N.J. July 14, 2025). Quinn Emanuel's fees were reasonable in those cases for much the same reason they are here: this case demanded experienced, sophisticated counsel because of the high stakes and complexity of the issues.

(c) <u>The CLS Fee Schedule Is Not the Proper Measure of Reasonable Fees.</u>

Although some courts in this District consult the Community Legal Services ("**CLS**") fee schedule, it is not the right measure here for three reasons.

*First*, it was last updated in January 2023, and so it does not capture the substantial rise in large-firm billing rates since then. *Cf. McCready*, 2026 WL 1847251, at *7 (noting that the CLS fee schedule was three years old and failed to account for inflation). Since the "*current* market rate, rather than the date of service, is the relevant indicator for purposes of calculating a reasonable rate," a three-year-old schedule is not a reliable benchmark. *LeJeune*, 420 F. Supp. 3d at 340.

---

2021 WL 7209226 (D. Del. Dec. 6, 2021); *Proofpoint, Inc. v. Vade Secure, Inc.*, 2020 WL 7398791, at *3 (N.D. Cal. Dec. 17, 2020) (finding Quinn Emanuel's rates to be "well within (if not below) the range of prevailing rates … for attorneys of comparable skill, experience, and reputation"); *Liqwd, Inc. v. L'Oreal USA, Inc.*, 2019 WL 6840353, at *13 (D. Del. Dec. 16, 2019) (finding Quinn Emanuel's "hourly rates and the hours spent" to be "reasonable" and awarding $14 million in fees and costs); *Romain v. Sonnier*, 2019 WL 5810311, at *6 (E.D. La. Nov. 7, 2019); *Mirra v. Jordan*, 2016 WL 1659894, at *1 (S.D.N.Y. Apr. 8, 2016).

*Second*, it does not account for the size and sophistication of Quinn Emanuel, which brought necessarily extensive experience and resources to this complex, cross-border dispute. *See McCready*, 2026 WL 1847251, at *7 (noting that the CLS fee schedule did not account for attorneys' real estate and pro bono experience); *Damian J. v. Sch. Dist. of Philadelphia*, 2008 WL 1815302, at *2 (E.D. Pa. Apr. 22, 2008), *aff'd,* 358 F. App'x 333 (3d Cir. 2009) ("The only criteria reflected in the CLS fee schedule is years of experience. The [CLS] fee schedule does not take into account the specialized skills and advanced degrees the attorneys bring to their practice, their experience in the particular field of special education law, the size of the law firm, the level of work performed, nor the positions of counsel."). Indeed, the firm's litigation practice is consistently recognized as among the best in the country: in 2026, Chambers named Quinn Emanuel its Commercial Litigation Law Firm of the Year.[7] In 2021, Chambers USA ranked Quinn Emanuel in 34 categories across nine jurisdictions, including International Arbitration, and highlighted 41 of the firm's attorneys; The Legal 500 United States ranked Quinn Emanuel in six practice areas spanning 26 sub-categories, including International Litigation and International Arbitration, and highlighted 68 of the firm's attorneys; and, in November 2020, more than 200 organizations, each with over $1 billion in annual revenue, named Quinn Emanuel the one law firm they least wanted to face as opposing counsel, ranking it the number one "most feared" law firm, according to BTI Consulting Group's Litigation Outlook 2021.[8]

---

[7] *Quinn Emanuel Is Named Commercial Litigation Law Firm of the Year*, Quinn Emanuel (June 11, 2026), https://www.quinnemanuel.com/the-firm/news-events/quinn-emanuel-is-named-commercial-litigation-law-firm-of-the-year/ (last visited Nov. 9, 2026).

[8] *Quinn Emanuel Receives Top Rankings in Legal 500 United States 2021*, Quinn Emanuel (June 23, 2021), https://www.quinnemanuel.com/the-firm/news-events/quinn-emanuel-receives-top-rankings-in-legal-500-united-states-2021/ (last visited Nov. 9, 2026); *November 2020: Survey Shows Quinn Emanuel Is the Most Feared Law Firm in the World Again*, Quinn Emanuel (Nov. 17, 2020), https://www.quinnemanuel.com/the-firm/news-events/november-2020-survey-shows-quinn-emanuel-is-the-most-feared-law-firm-in-the-world-again/ (last visited Nov. 9, 2026).

*Third*, the CLS fee schedule does not account for the qualifications of the Quinn Emanuel attorneys who handled this matter. Kristin Tahler, for example, chairs the firm's False Claims Act Practice and co-chairs its International Disputes: Section 1782 Practice, and she has deep experience litigating sophisticated and complex Section 1782 actions. *See* Tahler Dec. ¶ 17. Matthew Bunting and Cordelia Rayner are both solicitors in England and Wales, which allowed the team to address the English privilege questions at the center of the Motion to Compel directly. *See id.* ¶¶ 18–20.

The CLS fee schedule accounts for none of this, and thus is not an appropriate measure in this particular case. The Court should award Quinn Emanuel's already-discounted fees as they were charged at the time.

**2. The Other Firms' Fees Were Reasonable.**

(a) Skarzynski Marick

Iraq Telecom seeks reimbursement for the 81.60 hours that its co-counsel, Skarzynski Marick, spent on the Briefing, for which Skarzynski Marick charged $38,760.00. *See* Declaration of James T. Sandnes ("**Sandnes Dec.**") ¶¶ 6–11 & Ex. 1. Iraq Telecom seeks reimbursement for fees charged by only one timekeeper: Mr. Sandnes, a partner, at $475 per hour. *Id.* ¶ 9 & Ex. 1. Skarzynski Marick did not discount these charges. *Id.* ¶ 9. This is the rate Skarzynski Marick actually charged, and the fees were paid in full, which is evidence of its reasonableness for the reasons given above. *Id.* ¶ 10. It is also a reasonable rate for a lawyer of Mr. Sandnes's experience. Mr. Sandnes has practiced law for more than 40 years, focusing on complex litigation, and is a member of the bar of this Court. *Id.* ¶¶ 1–2. His rate is less than Quinn Emanuel's discounted partner rates in this matter, *see* Tahler Dec. ¶¶ 29–31, and below the bottom of the Real Rate Report range for partners, *see supra* Table B.

The hours Skarzynski Marick worked are also reasonable. As Pennsylvania co-counsel, Mr. Sandnes appeared on both the Motion and the Reply. Sandnes Dec. ¶ 3. He spent 0.60 hours reviewing and conferring about the Log after the Clients produced it, 43.60 hours on the Motion, and 37.40 hours on the Reply. *Id.*, Ex. 1. Before Iraq Telecom moved to compel, Mr. Sandnes took part in its conferral with the Clients' counsel about the Log. *Id.* ¶ 6. While Quinn Emanuel prepared the Motion, he researched various issues, drafted sections of the memorandum of law, and revised the Tahler declaration supporting the Motion (ECF No. 20-2). Sandnes Dec. ¶ 6. After the Clients filed their Opposition, he researched the issues it raised, outlined arguments in response, and reviewed and revised Quinn Emanuel's drafts of the Reply. *Id.* Skarzynski Marick also exercised billing judgment: Mr. Sandnes reviewed every entry on its invoices for October 2020 through January 2021, included only the entries recording work on the Motion and the Reply, and excluded 2.20 of the 2.70 hours he billed on November 6, 2020, because they reflect unrelated work. *Id.* ¶ 11 & Ex. 1. These are reasonable hours for Skarzynski Marick's role in researching, drafting, and revising portions of both briefs, particularly after the Opposition broadened the issues in dispute.

(b) <u>Gibson Dunn</u>

Iraq Telecom seeks reimbursement for the 10.70 hours that its Arbitration counsel, Gibson Dunn, spent in preparing the declaration of Lindsey D. Schmidt (ECF No. 27-2) in support of the Reply. Gibson Dunn charged $10,527.50. *See* Declaration of Lindsey D. Schmidt ("**Schmidt Dec.**") ¶¶ 1, 6, 8 & Ex. 1. Three timekeepers recorded time: Ms. Schmidt, a partner, at $1,025 per hour in 2020 and $1,245 per hour in 2021 (4.30 hours, $4,583.50); Mr. Shapiro, then an associate, at $965 and $1,025 per hour (3.30 hours, $3,358.50); and Ms. Cai, an associate, at $745 and $865 per hour (3.10 hours, $2,585.50). *Id.* ¶ 7 & Ex. 1. Ms. Schmidt's effective rate was about $1,066 per hour, and the blended rate for the two associates was about $929 per hour. Ms. Schmidt's

effective rate and the associates' blended rate are at or below Quinn Emanuel's standard rates for the same period—$1,150 to $1,195 per hour for partners and $790 to $1,110 per hour for associates—and are slightly above the discounted blended rates Quinn Emanuel charged Iraq Telecom in this matter (9% above for Gibson Dunn's partner and 20% above for its associates). *See* Tahler Dec. ¶¶ 29–30. That difference reflects the discounts Quinn Emanuel extended to Iraq Telecom, not a premium in Gibson Dunn's rates. Gibson Dunn charged the rates of a leading international arbitration practice for work that only Iraq Telecom's counsel in the Arbitration could do: explaining the status of the Arbitration in response to the Opposition. *See* Schmidt Dec. ¶ 5.

The hours are reasonable. In their Opposition, the Clients argued that the arbitration described in the Application had been withdrawn and could no longer support discovery under Section 1782. (ECF No. 24 at 4.) Only Iraq Telecom's counsel in the Arbitration could answer that argument. Ms. Schmidt's declaration explained that the first arbitration was discontinued without prejudice for reasons of efficiency, that substantially the same claims were pending in a second arbitration, and that Iraq Telecom would use the discovery it sought from Dechert in that pending arbitration. (ECF No. 27-2 ¶¶ 16–17.) Ms. Schmidt spent 4.30 hours drafting and amending the declaration, and two associates spent 6.40 hours revising it, assembling its exhibits, and cite-checking it. Schmidt Dec., Ex. 1. These are reasonable hours for the declaration, which had to respond to new arguments made by the Clients in their Opposition.

(c) <u>Raedas</u>

For Raedas, the London investigations firm whose work underlies the Motion, Iraq Telecom seeks 26.30 hours and $12,333.73 (£9,238.75), which reflects a 5% discount Raedas applied to its £9,725.00 in fees. Because Raedas billed in pounds, the rates and amounts below are stated in pounds, as billed and before that discount; only the total sought has been converted to dollars, at the November 24, 2020, exchange rate. *See supra* note 2. Bortman Dec. ¶¶ 8–10 &

Ex. 1. Two timekeepers recorded the time: Mr. Bortman, a partner, at £550 per hour (10.50 hours, £5,775.00), and Ms. Burton, a case manager, at £250 per hour (15.80 hours, £3,950.00). *Id.* ¶ 7 & Ex. 1. The blended rate is about £370 per hour. These are the rates Raedas actually charged and Agility paid in full, which is evidence of their reasonableness for the reasons given above. *Id.* ¶¶ 4, 11.

The hours are reasonable. Raedas spent 8.05 hours (£3,137.50) reviewing the Log and conferring with Quinn Emanuel about it, and 18.25 hours (£6,587.50) preparing the Bortman declaration (ECF No. 20-6) and its 26 exhibits. Bortman Dec., Ex. 1. That declaration supplied the facts about who the third parties on the Log were and how they related to the Clients, which only Raedas's investigation could provide. Raedas also exercised billing judgment: it recorded 42.25 hours in the relevant period but seeks only 26.30, excluding 15.95 hours (£5,712.50) spent on unrelated matters. *Id.* ¶¶ 8, 10.

## CONCLUSION

For the reasons set forth above, Iraq Telecom respectfully requests that the Court award it reasonable attorneys' fees of $474,829.04.

Dated: November 9, 2026

By: */s/ Kristin N. Tahler*

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

Kristin N. Tahler (*admitted pro hac vice*)
865 S Figueroa St., 10th Floor
Los Angeles, CA 90017
(213) 443-3000
*kristintahler@quinnemanuel.com*

Katy Akopjan (*admitted pro hac vice*)
295 5th Ave., 9th Floor
New York, NY 10016
*katyakopjan@quinnemanuel.com*

-and-

SKARZYNSKI MARICK & BLACK, LLP

James Sandnes
PA Bar Number: 41721
One Battery Park Plaza
New York, New York 10004
(212) 820-7700
*jsandnes@skarzynski.com*

*Counsel for Applicant Iraq Telecom Limited*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on this 9th day of November, 2026, a true and correct copy of the foregoing was electronically filed and may be viewed and downloaded from the ECF System, which will serve a Notice of Filing on all counsel of record via the Court's e-service system.

*/s/ Kristin N. Tahler*
Kristin N. Tahler